1  Steven J. Parsons
   Nevada Bar No. 363
2  Andrew L. Rempfer
   Nevada Bar No. 8628
3  Joseph N. Mott
   Nevada Bar No. 12455
4  Scott E. Lundy
   Nevada Bar No. 14235
5  LAW OFFICES OF STEVEN J. PARSONS
   10091 Park Run Dr Ste 200
6  Las Vegas NV 89145-8868
   (702) 384-9900
7  (702) 384-5900 (fax)
   Steve@SJPlawyer.com
8  Andrew@SJPlawyer.com
   Joey@SJPlawyer.com
9  Scott@SJPlawyer.com

10 Attorneys for Plaintiff
   **CHARLES GRAHL**, an individual,
11 on behalf of himself and
   all others similarly situated

12

13                    **UNITED STATES DISTRICT COURT**

14                        **DISTRICT OF NEVADA**

15  **CHARLES GRAHL;** individually and on behalf          Case No. **2:14-cv-305-RFB-(VCF)**
    of all other similarly situated,
16                                                          **PLAINTIFF'S MOTION TO COMPEL**
          Plaintiff,                                        **DEFENDANT CIRCLE K STORES, INC.'S**
17                                                          **COMPLIANCE WITH FED. R. CIV. P. 30(b)(6)**
    vs.                                                     (Fed. R. Civ. P., Rule 30; LR 26-7)
18
    **CIRCLE  K  STORES,  INC.,** a  foreign
19  corporation; **DOES I** through **V**, inclusive;
    and  **ROE  Corporations  I**  through  **V,**
20  inclusive,

21        Defendants.
    _____/
22

23        Plaintiff **CHARLES GRAHL** ("Grahl"), by his attorneys, Steven J. Parsons, Andrew L.

24  Rempfer, Joseph N. Mott, and Scott E. Lundy of Law Offices of Steven J. Parsons, hereby files

25  his Motion to Compel Defendant Circle K Stores, Inc.'s Compliance with Fed. R. Civ. P., Rule

26  30 and 30(b)(6).

27        Plaintiff's Motion is made and based on the attached Memorandum of Points and



1   Authorities, the papers and pleadings on file herein, the exhibits attached hereto, and the

2   arguments of counsel, if any, at the time of hearing this matter.

3        Dated: Wednesday, June 7, 2017.

4                        LAW OFFICES OF STEVEN J. PARSONS

5                        /s/ Steven J. Parsons

6                        STEVEN J. PARSONS
                         Nevada Bar No. 363

7                        Attorney for Plaintiff
                         **CHARLES GRAHL,** an individual, on behalf of

8                        himself and all others similarly situated

9                        **CERTIFICATE OF SERVICE**

10        I hereby certify that service of the foregoing Motion to Compel Defendant Circle K

11   Stores, Inc.'s Compliance with Fed. R. Civ. P., Rule 30 was made by e-filing with the Court's

12   CM/ECF system, duly noting that on prior occasions counsel has consented to be served in

13   that manner.

14        Dated: Wednesday, June 7, 2017.

15                        /s/ Candice Benson

16                        An employee of LAW OFFICES OF STEVEN J. PARSONS

17               **MEMORANDUM OF POINTS AND AUTHORITIES**

18       **I.**     **Introduction**

19       "…[T]he burden upon the responding party, to prepare a knowledgeable Rule
         30(b)(6) witness, may be an onerous one, but we are not aware of any less

20        onerous means of assuring that the position of a corporation that is involved in
         litigation, can be fully and fairly explored." *Prokosch,* 193 F.R.D. at 638.

21

22        This Motion is necessitated by Defendant Circle K Stores Inc.'s ("Circle K") purposeful

23   and ongoing dilatory tactics and obstinance in the face of Fed. R. Civ. P., Rule 30(b)(6)'s basic

24   requirements that entities produce a proportionate number of designees, and that each

25   designee be fully educated on the noticed topics for which they are designated to speak on

26   behalf of the entity.

27        Instead, in response to many topics in Plaintiff's Notice of Deposition within Fed. R. Civ.



1   P., Rule 30(b)(6) ("30(b)(6) Notice") Circle K has designated multiple designees for individual

2   noticed topics.  Moreover, for the single designee whose deposition has already commenced,

3   Kim Hoppa, Circle K limited Ms. Hoppa's testimony to that which she had personal knowledge

4   and apparently made absolutely no attempts to educate her, as is required by the Rule.

5   Plaintiff now requests that this Court compel Circle K to limit its designees and that

6   every future deponent be directed to be properly prepared to testify fully as to the noticed

7   topics.

8   II.   Factual Background

9   A.   Grahl Files His Complaint And The Class Is Conditionally Certified.

10   Plaintiff Charles Grahl ("Grahl") filed his Complaint on February 27, 2014, alleging

11   Circle K violated provisions of the Fair Labor Standards Act ("FLSA") by mis-classifying certain

12   employees as exempt from FLSA's overtime requirements.  See Dock. 1.  Grahl filed his

13   Motion for Class Certification on August 25, 2014.  See Doc. 126.  The class was

14   conditionally certified by Judge Boulware on August 26, 2015.  See Doc. 261.

15   B.   Grahl Issues His Notice Of Deposition To Circle K.

16   On June 15, 2016, Grahl issued his first Notice of Deposition to Circle K within Rule

17   30(b)(6).  See Notice of Deposition attached hereto as Exhibit 1.  The Notice of Deposition

18   contained twenty-one (21) specific topics for which Circle K was required to designate

19   knowledgeable deponents.  Approximately one month later, Circle K's counsel responded by

20   letter, complaining, "it would be impractical for Circle K to designate *a single witness* to testify

21   regarding the majority of the 21 topics…"  See July 19, 2016, Letter From Anthony L. Martin

22   attached hereto as Exhibit 2.

23   In response to Circle K's counsel's letter, Grahl's counsel agreed to re-issue the Notice

24   of Deposition and narrow down the noticed topics, but reiterated, "Circle K's obligation clearly

25   is to designate and prepare witnesses to testify on the Company's behalf for each of the topics

26   in our notice."  See July 21, 2016, Letter From Steven J. Parsons attached hereto as Exhibit

27   3.



LAW OFFICES OF
STEVEN J. PARSONS

10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

Page 3 of 18

C.     Circle K Designates Overlapping Witnesses.

On August 5, 2016, Circle K provided Plaintiff with its list of 30(b)(6) designees.  See August 5, 2016, Letter From Anthony L. Martin attached hereto as Exhibit 4.  In it, Circle K designated a total of 9 individuals for the 21 noticed topics.  The individuals were designated as follows:

1.     Kim Hoppa (Director of Human Resources, Training and Loss Prevention for the Arizona Division) - Topics 4-9, 15-19, portions of topics 10-13.

2.     Linda Prince (HRIS Payroll Manager and Custodian of Records for certain personnel management document systems) - Portions of topics 3, 11, and 14.

3.     Ginger Brown (Manager, IT-HR/Payroll Systems) - Topic 21, portions of topics 3, 10, and 14.

4.     Joyce Clemmons (HRM for the Gulf Coast Division) - Portions of topics 5-14 and 17.

5.     Christie O'Halloran (HRM for the Florida Division) - Portions of topics 5-14 and 17.

6.     Sandra Farthing (HRD for the West Coast Division) - Portions of topics 5-14 and 17.

7.     Paula Dill (Retired former HRD for the Southeast Division) - Portions of topics 5-14 and 17.

8.     Troy Beatty (HRM for the Southwest Division) - Portions of topics 5-14 and 17.

9.     Carlos Estrada (Regional Operations Director for the Arizona) - Topic 20.

To simplify the above information, Grahl's counsel prepared a visual matrix to assist in tracking the web of designees.  That Matrix is attached hereto as Exhibit 5.

The deponents were designated such that _no single deponent was responsible for testifying regarding Circle K's practices as an entity_.  Instead, Circle K is attempting to force Grahl's counsel to seek out multiple deponents, each from a different Circle K geographic "Division".  This would allow Circle K's designees to claim ignorance and point the finger at



LAW OFFICES OF
STEVEN J. PARSONS

10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1    another should the questioning encompass something more than the individual's personal

2    knowledge.  This practice of division and compartmentalization is disfavored and disallowed

3    under Rule 30(b)(6).

4        Upon receipt of the list of designees, Grahl's counsel drafted correspondence that

5    carefully explained the duties and responsibilities involved in naming and preparing 30(b)(6)

6    designees.  See October 6, 2016, Letter From Grahl's Counsel attached hereto as Exhibit 6.

7        A final Amended Notice of Deposition was sent on November 8, 2016.  See Amended

8    Notice of Deposition attached hereto as Exhibit 7.  The Amended Notice of Deposition now

9    contained twenty-two (22) noticed topics.

10        **D.**     **Kim Hoppa Is Evasive And Unprepared At Part 1 Of Her Deposition.**

11        On December 7, 2016, Kim Hoppa's ("Hoppa") deposition began.  However, it soon

12    became apparent that Circle K was intentionally thwarting Grahl's rightful attempts at learning

13    about noticed topics.  Hoppa made clear in her deposition testimony that Circle K had made

14    little to no effort to properly educate and prepare her to testify to matters beyond her personal

15    knowledge.  Incredibly, Hoppa even stated she was personally involved in delineating the

16    scope of her testimony so that she would only be responsible for testifying to matters related

17    to her day-to-day job duties, and no more:

18       "Q.     When the choice to choose the designees came to you, were you told
19                that you're going to testify, or did you conclude and exercise the prerogative of saying, "I'm the proper witness to testify to this"?

20       A.     No.  I went through and said, "I, I can do this.  I'm not the person to do
21                this.  I'm the person to do this.  I know this.  I don't know this."

22       Q.     Okay.  So as we go through the lists, it would be your testimony that all
                of the choices, whether they were affirmed by Doryce or Tony's office,
23                whatever, you were the initiator of the appropriateness of you being the designated witness?

24       A.     Yes."[1]

25    ...

26    _____

27       [1]Hoppa Depo, Pt. 1, attached hereto as Exhibit 8, at 75:8 - 75:20.



1  "Q.  So you simply made the choices, and nobody else reviewed it?

2  A.  I'm sure there's other people that reviewed it, or they may have.  I don't know.  I wasn't part of every single – I only know when I sat down with Tony and talked about it, and general counsel.

4  Q.  I don't want you to specifically relate what you told to Tony, but what I do need to know, when you say you're not familiar with what else happened, did you discuss it with anybody other than the lawyers?

6  A.  I did not.  No.

7  Q.  So you made the selections, you told the lawyers, and that's the first and last of it as you understood it?

8  A.  Yes."[2]

9  ...

10  Q.  "Did anybody tell you that you had an obligation to learn about the information to be responsive to these subjects?

11  A.  No.

12  Q.  Did anybody tell you that the company had an obligation to prepare witnesses to testify to these subjects?

14  A.  Did anybody tell me if –

15  Q.  The company has the obligation to prepare witnesses?

16  A.  No.

17  Q.  Okay.  So you would tell me you were totally unaware of what was required of you as the witness in being designated, and what was required of you in being educated to these subjects before you gave testimony?

19  A.  Well, in your wording, I guess, I mean, they told me I was, I needed to be here to speak about these subjects, or they would like me to be here, you know.  I chose to do this.  And that, I mean, that I was going to have to be here to tell the truth based on what I know.

22  Q.  But that was it?

23  A.  Yeah."[3]

24  ...

25  _____

26  [2]Ex. 8, Hoppa Depo, Pt. 1, at 78:2-78:16.

27  [3]Ex. 8, Hoppa Depo, Pt. 1, at 82:13-83:10.


10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1   "Q.   Okay.  So you understood that part of the burden of the rule is that if you're going to testify on a subject, there's really no limitation on what
2         you must do to prepare to be the designated witness.

3   A.   What I understood is, based on my knowledge and the topics that we have discussed that I would review, that that's where I needed to know
4        everything about those specific subjects, not the whole document."[4]

5   ...

6   "Q.   I thought I heard you say that, other than speaking with Ms. Brown and Ms. Prince, once you (were) designated, you didn't speak to anybody.
7         You may have spoken to them about some backroom operations, but that since you've been designated, you didn't speak to anybody else; is
8         that correct?

9   A.   Yes, that is correct, but I apologize.  Maybe the question is not being specific enough, I thought you were, you were asking me in regards to
10        the Grahl case.  There wasn't anybody else I spoke to about the Grahl case.  System practices, I speak to people on a daily basis, not just for
11        this case but just in general when questions come up."[5]

12        **E.      Kim Hoppa Is Evasive And Unprepared At Part 2 Of Her Deposition.**

13   Hoppa's deposition resumed on January 19, 2017.  Unfortunately, Hoppa was no more

14   prepared than she was during part 1 of her deposition, which was at least evident from her

15   testimony:

16   "Q.   Did you discuss with Ms. Prince payroll issues regarding your designation in the 30(b)(6) notice?
17
18   A.   We discussed, yes, the process and the questions that were going to be asked and the things that I didn't feel comfortable testifying to.

19   Q.   Okay.  Let's stop right there.  When you say you didn't feel comfortable, tell my why it is that you concluded you didn't feel comfortable on a
20        given subject?

21   A.   Again, some of the background, the keeping of records, the IT part of it, the systems part of it.  I'm not a part of putting it together.  I'm a part
22        of the implementation of it and the training of it.

23   Q.   Did someone tell you that was the prerequisite for being a designated witness on the designations we'd asked for?
24

25   _____

26   [4]Ex. 8, Hoppa Depo, Pt. 1, at 116:12-116:19.

27   [5]Ex. 8, Hoppa Depo, Pt. 1, at 122:3-122:15.



1    A.    No.

2    Q.    So you simply imposed your own sense that because you didn't
           understand the background of something, you didn't feel comfortable
3          testifying as to something?

4    A.    Correct.  I didn't feel I was the most knowledgeable, or would be the
           most knowledgeable to testify to that."[6]

5    ...

6    "Q.   Well, let's talk about that.  Was it such that you couldn't be educated
           about the knowledge that was being asked of in these questions?

7
     A.    I would not feel comfortable with that.  Again, I have had conversations
8          with Ginger Brown before regarding the IT side, and it goes over my
           head.  I don't understand what she's talking about."[7]

9    ...

10   "Q.   Do you have any reason to tell me today why you've read that into it,
           when now on review you realize there's nothing in there about most
11         knowledgeable?

12   A.    No.

13   Q.    Just something that you spontaneously created as a limitation on your
           part?

14
     A.    Yes.  I didn't feel comfortable discussing those.

15
     Q.    Let's talk about that briefly.  That's the multiple reference you say you
16         didn't feel comfortable.  Did either you or the company tell you that one
           of your self-imposed limitations could be your level of comfortability to
17         testify to these things?

18   A.    No.

19   Q.    Did you express to others that you believed you weren't comfortable
           testifying to some of these designations?

20
     A.    "Others"?

21
     Q.    Yes.  Did you express –

22
     A.    What do you mean by "others"?

23
     Q.    Anybody.   Did you express to anybody saying, "You know, I'm not
24         comfortable testifying as to that subject"?

25   _____

26   [6]Hoppa Depo, Pt. 2, attached hereto as Exhibit 9, at 259:15-260:13.

27   [7]Ex. 9, Hoppa Depo, Pt. 2 at 262:4-262:10.



1   A.   I believe I was – I don't believe I'm the one, the most knowledgeable to testify to that."[8]

2   ...

3   "Q.   Now, recognizing that you've yet again, right now, imposed the term of "most knowledgeable," which isn't a requirement, how did you come to believe that you weren't comfortable becoming the designated witness? What was the basis of your determination?

4

5

6   A.   Well, in many cases, these are for Circle K.  I'm going to go back to, I support the Arizona division.  So, in that case, it's not as easy to learn all of that when  there are different divisions and understand exactly what it is they do, what their laws are.  I am not a part of that, and I don't seek that knowledge.

7

8   Q.   Okay.  Let's contrast that, though.  Did anybody describe to you that under the rule, whether you were comfortable or not, or whether it was burdensome or not to learn that, that a designated witness, in fact, must make an effort to learn the subjects of the designation?

9

10

11   A.   I know what my designations are, and, yes, that was part of it that I would go out, and the things that I was not knowledgeable on, that I would learn those.  And those are –

12

13   Q.   So how did you discern within your mind then that which you were amenable to learning, versus that that you thought was too difficult and made you uncomfortable?

14

15   A.   Again, in my thoughts, it was the scope, the scope of what it was.  So, again, there are many things that, as a base, we may all do that we may start as a base of something, like a job description or something like that.  We start off, those are some basic things that we do.  However, when you start getting into details, those aren't my details to know or use in my business unit."[9]

16

17

18   ...

19   "Q.   The statement I made is not the way you open the subject with Linda? I'm not asking what education would have been required.  That may have been extensive.  It may have taken you hours or days.  That's not my question, ma'am.

20

21

22   My question was, there was nothing inhibiting you, other than your own self-imposed limitation, "Linda, I need your help.  Educate me."  It was that simple, wasn't it?

23

24

25   ────────────

26   [8]Ex. 9, Hoppa Depo, Pt. 2 at 272:16-273:16.

27   [9]Ex. 9, Hoppa Depo, Pt. 2 at 274:4-275:12.



LAW OFFICES OF
STEVEN J. PARSONS

10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1      A.      Yes.  It could have been that simple."[10]

2   ...

3      "Q.     So we know that you afforded yourself time to work with the attorneys
               to prepare for the deposition; correct?

4      A.      For what I was assigned for, yes, or for what I agreed to testify to.

5      Q.      I guess I'm lost again when say "assigned to."  Did somebody come to
               you and say, "We want you to be limited and not testify as to No. 3"?

6

7      A.      No.  I misspoke.  That's what I agreed that I would – what I agreed to,
               like we've been talking about, that I was comfortable in testifying to."[11]

8   ...

9      "Q.     You have an open end right now.  Tell me about how you would
               approach somebody, either Ms. Brown, Ms. Prince, or any of these
10             others about, "I need to get educated, I need to provide an entree to
               you for the discussion."  Tell me what you'd do.

11
       A.      I wouldn't do that, because I know there's a lot more to it than I am –
12             probably that I'm capable of learning and discussing.

13     Q.      So without knowing, and without making an inquiry, you've determined
               that it's an impossible task to become educated, because it's too
14             difficult for you?

15     A.      I've determined that it's more than I feel that I'd be able to do, yes.

16     Q.      Okay.  Did you counsel with anybody about that decision?

17     A.      No.

18     Q.      I mean, literally anybody?  When you learned that you're going to be a
               designated witness, did you tell anybody, "Please don't designate me on
19             certain subjects because I believe it's far more difficult than I'm capable
               of doing"?

20
       A.      From what I recall, it was a discussion with general counsel on the
21             knowledge base of that, and how I was not comfortable with going into
               the specifics that were needed for those areas.

22
       Q.      But you initiated that comment.  It wasn't imposed on you?

23
       A.      I don't recall it being imposed on me.

24

25   ────────────────

26   [10]Ex. 9, Hoppa Depo, Pt. 2 at 282:6-282:15.

27   [11]Ex. 9, Hoppa Depo, Pt. 2 at 284:20 - 285:5.



*10091 Park Run Drive Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
*Info@SJPlawyer.com*

1  Q.   So you simply said, "I'm not comfortable being a witness about these subjects"?

2  A.   From what I recall."[12]

3  ...

4  "A.  In your – again, that's how you feel about it being simple, asking for help.  However, I know with what I've learned about just Arizona and every state being different, that it was going to be more than just asking that question.  Everybody has different ways of doing things within each division.

5

6

7  Q.   But you made no effort to learn how those differences –

8  A.   No.

9  Q.   – are?

10  A.   No, I did not.

11  Q.   Okay.  So you imposed upon yourself basically an inhibition to even asking for help; right?

12  A.   I did not ask for help.

13

14  Q.   And you were inhibited from asking for help, because you feared it was too broad and too deep and you weren't comfortable learning?

15  A.   It wasn't a fear, as much as I wasn't willing to do that.  I felt it was too much, because I do have my job that I still have to do every day, in addition to spending all the time I've spent to get ready for this deposition in what I'm answering now."[13]

16

17

18       F.   Counsel Conducts A Meet And Confer Conference, Within LR 26-7.

19       On February 3, 2017, counsel for both parties conducted a meet and confer

20  conference at LAW OFFICES OF STEVEN J. PARSONS.   Counsel were unable to come to an

21  agreement regarding (1) the number of Circle K's 30(b)(6) designees or (2) the requisite level

22  of preparation for each individual designee.  See Declaration of Joseph N. Mott attached

23  hereto as Exhibit 10.

24

25  _____

26  [12]Ex. 9, Hoppa Depo, Pt. 2 at 306:22 - 308:3.

27  [13]Ex. 9, Hoppa Depo, Pt. 2 at 308:14 - 309:10.



1    III.    Legal Argument

2         A.      Legal Standard: Fed. R. Civ. P. 30(b)(6)

3         Upon receipt of a 30(b)(6) deposition notice, "the persons designated must testify

4    about information known or reasonably available to the organization." *Fed. R. Civ. P., Rule*

5    *30(b)(6)*.  The purpose of Rule 30(b)(6), "is to streamline the discovery process." *Great Am.*

6    *Ins. Co. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534, 539 (D. Nev. 2008).  Rule 30(b)(6) is,

7    "a discovery device designed to avoid ."  *Id.*  Another purpose, "is to curb any temptation by

8    the corporation to shunt a discovering party from 'pillar to post' by presenting deponents who

9    each disclaim knowledge of facts known to someone in the corporation." *Id.*

10        While there is no explicit limit on the number of designees a company may designate

11   within 30(b)(6), companies must, "make a conscientious good-faith endeavor to designate the

12   persons having knowledge of the matters sought…and to prepare those persons in order that

13   they can answer fully, completely, unevasively, the questions posed…as to the relevant subject

14   maters." *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.,* 137 F.R.D. 267, 278

15   (D. Neb. 1989) (quoting *Mitsui & Co. v. Puerto Rico Waters Res. Auth.,* 93 F.R.D. 62, 67

16   (D.P.R. 1981)).

17        "A Rule 30(b)(6) witness need not have personal knowledge of the designated subject

18   matter." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.,* 497 F. 3d 1135, 1147 (10th Cir.

19   2007); *see generally* Federal Civil Rules Handbook, 2012 Ed., at p. 838 ("the individual will

20   often testify to matters outside the individual's personal knowledge").  "(T)he corporation has

21   a duty to make a good faith, conscientious effort to designate appropriate persons and to

22   prepare them to testify fully and non-evasively about the subjects." *Great. Am.,* 251 F.R.D. at

23   540.  "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to

24   the designee or to matters in which the designated witness was personally involved." *Wilson*

25   *v. Lakner,* 228 F.R.D. 524 (D. Md. 2005).  "The duty extends to matters reasonably known

26   to the responding party." *Fowler v. State Farm Mut. Auto. Ins. Co.,* No. 07-00071 SPK-KSC,

27   2008 U.S. Dist. LEXIS 93263, 2008 WL 4907865, at *4 (D. Haw. 2008).  Thus, even if an



1  HR rep from one division does not have personal knowledge of the exact day-to-day operations

2  of another division, a company has a duty to educate its deponents so that as few as possible

3  depositions are necessary.

4       The party responding to a 30(b)(6) deposition notice, "must prepare deponents by

5  having them review prior fact witness deposition testimony as well as documents and

6  deposition exhibits." *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 639 (D.Minn.,

7  2000) (citing *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C., 1996); *see also Bank*

8  *of New York v. Meridien BIAO Bank Tanzania, Ltd.,* 171 F.R.D. 135, 151 (S.D.N.Y., 1997)

9  (deponent must be prepared, "to the extent matters are reasonably available, whether from

10  documents, past employees, or other sources."). Even if the documents are voluminous and

11  the review of those documents would be burdensome, the deponents are still required to

12  review them in order to prepare themselves to be deposed. *See Prokosch,* 193 F.R.D. at 638

13  ("the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness,

14  may be an onerous one, but we are not aware of any less onerous means of assuring that the

15  position of a corporation that is involved in litigation, can be fully and fairly explored."). Such

16  preparation is necessary because the, "individuals so deposed are required to testify to the

17  knowledge of the corporation, not the individual." *Poole ex rel. Elliot v. Textron, Inc.,* 192

18  F.R.D. 494, 504 (D.Md., 2000); *see also Prokosch,* 194 F.R.D. at 638 (a corporation must

19  prepare its deponents "so that they may give complete, knowledgeable and binding answers

20  on behalf of the corporation."); *Taylor,* 166 F.R.D. at 361 ("the designee must not only testify

21  about facts within the corporation's knowledge, but also its subjective beliefs and opinions…

22  The corporation must provide its interpretation of documents and events.")." *Calzaturficio*

23  *S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.,* 201 F.R.D. 33, 37 (D. Mass. 2001).

24        **B.**    **Circle K Has Improperly Designated A Disproportionate Number Of 30(b)(6) Designees.**

25

26       It is clear from Circle K's designations, particularly its duplicative and multiple designees

27  for single topics, that Circle K has no intention of streamlining the discovery process in this



*10091 Park Run Drive Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
*Info@SJPlawyer.com*

1 case, and instead seeks to impose upon Plaintiff the exact burdens Rule 30(b)(6) is designed

2 to prevent: the "passing of the buck" by multiple deponents to each other on the same topic.

3        Circle K is attempting to compartmentalize its 30(b)(6) designees based on individual's

4 personal knowledge of the specified topics and grouped by Circle K's geographic divisions, i.e.,

5 Circle K proposes a separate 30(b)(6) deponent for each of its several "Divisions" for certain

6 30(b)(6) topics.  As it stands, Circle K has designated nine potential deponents to testify

7 regarding 19 of the 22 noticed topics.  Many of these deponents overlap in their proposed

8 area of testimony, as shown in Exhibit 5.  This is wholly unreasonable and inappropriate.  It

9 inhibits the normal flow of information from one party to another.  Outside of the intent of the

10 rule, it seeks to shift the burden of the expense of discovery disproportionally to the

11 discovering party.  Moreover, the multiple designations, based on the company's different

12 geographic regions, are particularly inappropriate in light of the fact that there is, apparently,

13 only one company-wide job description for a "Store Manager", regardless of the Division.  See

14 Job Description attached hereto as Exhibit 11.

15        Circle K argues that it would be "impractical" for it to educate a singe designee for each

16 of the noticed topics, and as a result, Plaintiff should be required to conduct seven times the

17 number of depositions to learn what Circle K knows.[14] Corporate depositions within Rule

18 30(b)(6) are not convenient or practical affairs (as numerous cases cited *supra* amply point

19 out).  It is patently unfair and inappropriate to force Mr. Grahl and his counsel to conduct

20 seven times the number of depositions necessary, in violation of the Rule and the stated

21 purpose of the Rule, merely because it would be difficult or onerous for Circle K to educate

22 and designate a single deponent for each of the topics in Plaintiff's 30(b)(6) Notice.

23        Furthermore, if Plaintiff were required to depose several deponents for each 30(b)(6)

24 topic, Plaintiff would unquestionably find himself back in front of the Court to address the very

25 issues that Rule 30(b)(6) is designed to avoid; specifically, the pointing of fingers by several

26 _____

27        [14] See Exhibit 2, July 19, 2016 Letter from Circle K counsel, Tony Martin.



*10091 Park Run Drive Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
Info@SJPlawyer.com

1  different deponents at each other in response to Plaintiff's counsel's questions and "the

2  bandying by [Circle K] where individual officers or employees disclaim knowledge of facts

3  clearly known to the corporation."

4      Put simply, Circle K's designation of more than one person for Topics 5-14 and 18 is

5  inappropriate and not in keeping with the Rules or the stated purposes of the Rules.

6      **C.   Kim Hoppa Was Not Properly Educated And Designated To Testify Regarding Topics 5-14 And 17 Of Plaintiff's Rule 30(b)(6) Notice.**

7

8      Circle K designated Kim Hoppa as the person knowledgeable about most of the

9  proposed topics in Plaintiff's 30(b)(6) Notice; however, as her deposition testimony above

10  demonstrates, Hoppa was knowingly unprepared for many of the topics for which she was

11  designated.  Instead of coming prepared and ready to testify on the noticed topics, Hoppa

12  repeatedly claimed ignorance and pointed to others as having "more knowledge" on given

13  subjects.

14      Hoppa's deposition testimony violated the spirit and letter of relevant 30(b)(6) case law

15  in a number of ways.

16      First, Hoppa admitted she played a part in selecting the scope of her designation based

17  entirely on her personal knowledge.  See *supra* at pg. 5:18, 6:1.  This is an astounding

18  example of the tail wagging the dog.  Apparently, Circle K and its counsel went to its regional

19  HR representatives, asked what they had personal knowledge of, and limited their designations

20  as such.  This is wholly inappropriate and runs counter to the basic requirement of Rule

21  30(b)(6) that companies must, "make a conscientious good-faith endeavor to designate the

22  persons having knowledge of the matters sought…and to prepare those persons in order that

23  they can answer fully, completely, unevasively, the questions posed…as to the relevant subject

24  maters." *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278

25  (D. Neb. 1989) (quoting *Mitsui & Co. v. Puerto Rico Waters Res. Auth.*, 93 F.R.D. 62, 67

26  (D.P.R. 1981)).

27      Second, Hoppa refused to testify to anything beyond her personal knowledge.  See



*10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900*
Info@SJPlawyer.com

*supra* at pgs. 5:18, 6:1, 7:1, 9:3, 10:3. "A Rule 30(b)(6) witness need not have personal knowledge of the designated subject matter." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.,* 497 F. 3d 1135, 1147 (10th Cir. 2007). Instead, "[t]he duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Wilson v. Lakner,* 228 F.R.D. 524 (D. Md. 2005). The point of this rule "is to curb any temptation by the corporation to shunt a discovering party from 'pillar to post' by presenting deponents who each disclaim knowledge of facts known to someone in the corporation." *Great Am. Ins. Co. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534, 539 (D. Nev. 2008). This is precisely what Circle K is attempting to do here.

Any time a question was posed to Hoppa involving differences between the "Divisions" or Circle K's practices as a whole, she disclaimed knowledge and directed Plaintiff's Counsel to speak with others. Hoppa and other Circle K deponents should not be allowed to limit their testimony to their day-to-day activities alone. They should be required by this Court to expand their knowledge base to include "matters reasonably known to the responding party." *Fowler v. State Farm Mut. Auto. Ins. Co.,* No. 07-00071 SPK-KSC, 2008 U.S. Dist. LEXIS 93263, 2008 WL 4907865, at *4 (D. Haw. 2008).

Third, Hoppa admitted to barely making any effort, at all, to become educated on noticed topics. See *supra* at pgs. 6:10, 7:1, 7:6, 7:16, 8:6, 8:10, 9:3, 10:3, 10:9, 11:4. Even if the documents are voluminous and the review of those documents would be burdensome, deponents are still required to review them in order to prepare themselves to be deposed. *See Prokosch,* 193 F.R.D. at 638 ("the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation that is involved in litigation, can be fully and fairly explored."). Such preparation is necessary because the, "individuals so deposed are required to testify to the knowledge of the corporation, not the individual." *Poole ex rel. Elliot v. Textron, Inc.,* 192 F.R.D. 494, 504 (D.Md., 2000). Hoppa's complaints that she was not the most knowledgeable on a given subject or that she did not



10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1    feel comfortable approaching others with questions do not excuse her from her obligation to

2    properly prepare for the noticed topics.  Additionally, Hoppa repeatedly complained that such

3    preparation would be difficult and time consuming.  However, as the case law makes clear,

4    even if preparation may be 'onerous', deponents still must properly prepare.  Hoppa's efforts

5    prior to her deposition do not come close to satisfying Rule 30(b)(6)'s requirements.

6          Fourth, Hoppa repeatedly pointed Grahl's counsel in the direction of others in Circle K

7    whom Hoppa claimed possessed relevant knowledge.  See supra at pgs. 8:6, 8:10, 9:3, 10:9,

8    11:4. The is precisely the Balkanization and bandying-about that Rule 30(b)(6) aims to

9    prevent.  These sorts of games and dilatory tactics should not be endorsed by this Court.

10          Instead, each and every Circle K deponent should be required to comply with Rule

11   30(b)(6)'s requirement that all deponents must be educated and fully prepared to testify

12   regarding the entity's collective knowledge.  No more finger pointing.  No more self-imposed

13   limitations.  Only compliant and efficient discovery should be conducted going forward.

14   **IV.    Circle K Should Be Sanctioned For Their Discovery Delays.**

15          Nev. R. Civ. P., Rule 37(5)(A) provides in pertinent part:

16          If the motion is granted – or if the disclosure or requested discovery is provided
             after the motion was filed – the court must, after giving an opportunity to be
17          heard, require the party or deponent whose conduct necessitated the motion,
             the party or attorney advising that conduct, or both to pay the movant's
18          reasonable expenses incurred in making the motion, including attorney's fees.

19          Here, Circle K's improper compartmentalization of its 30(b)(6) designations

20   necessitated the filing of this motion.  Should Plaintiff prevail, he should be awarded all costs

21   and fees associated with the filing of the motion, as well as costs and fees incurred in the

22   taking of Ms. Hoppa's ineffective deposition.

23   . . .

24   . . .

25   . . .

26   . . .

27   . . .



10091 Park Run Drive Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1    **V.    Conclusion**

2          Based on the preceding, Plaintiff respectfully requests this Court compel Defendants

3    compliance with Fed. R. Civ. P. 30(b)(6) and order that Defendant designate and educate no

4    more than one person for any given designated 30(b)(6) topic.

5          Dated: Wednesday, June 7, 2017.

6                                             LAW OFFICES OF STEVEN J. PARSONS

7                                             /s/ Steven J. Parsons
                                              STEVEN J. PARSONS
8                                             Nevada Bar No. 363

9                                             Attorney for Plaintiff
                                              **CHARLES GRAHL,** an individual, on behalf of
10                                            himself and all others similarly situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27



*10091 Park Run Drive Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
Info@SJPlawyer.com

# Exhibit "1"

Exhibit "1"

1  Andrew L. Rempfer
   Nevada Bar No. 8628
2  LAW OFFICES OF STEVEN J. PARSONS
   7201 W Lake Mead Blvd Ste 108
3  Las Vegas NV 89128-8354
   (702) 384-9900
4  (702) 384-5900 (fax)
   Andrew@SJPlawyer.com
5
   Attorneys for Plaintiff
6  CHARLES GRAHL, an individual,
   on behalf of himself and
7  all others similarly situated

8               UNITED STATES DISTRICT COURT

9                   DISTRICT OF NEVADA

10 CHARLES GRAHL, an individual, on behalf of      Case No. 2:14-cv-305-RFB-(VCF)
   himself and all others similarly situated as
11 referenced herein,                              PLAINTIFF CHARLES GRAHL'S
                                                   NOTICE OF DEPOSITIONS
12          Plaintiff,                             (Fed. R. Civ. P., Rule 30 and 30(b)(6))

13 vs.

14 CIRCLE K STORES, INC., a foreign
   corporation; DOES I through V, inclusive;
15 and ROE corporations I through V, inclusive,

16          Defendant.
   _____/
17

18      TO:   Defendant CIRCLE K STORES, INC. ("Defendant" or "Circle K"), and its

19 attorneys, Anthony L. Martin and Jill Garcia of OGLETREE DEAKINS NASH SMOAK & STEWARD, P.C.:

20      PLEASE TAKE NOTICE that Plaintiff CHARLES GRAHL by his attorneys, Andrew L.

21 Rempfer, of LAW OFFICES OF STEVEN J. PARSONS, will take the deposition under oath of the

22 designees of Defendant within Fed. R. Civ. P. 30(b)(6), for the subjects listed below, before

23 an officer within Fed. R. Civ. P., Rules 28 and 29 commencing at 9:00 am, PDT, on Thursday,

24 July 14, 2016 at LAW OFFICES OF STEVEN J. PARSONS, 10091 Park Run Dr Ste 200, Las Vegas,

25 NV 89145-8868, (702) 384-9900.

26 ...

27 ...

1    Dated: June 15, 2016.

2                                                        LAW OFFICES OF STEVEN J. PARSONS

3                                                        /s/ Andrew L. Rempfer
                                                         ANDREW L. REMPFER
4                                                        Nevada Bar No. 8628

5                                                        Attorney for Plaintiff
                                                         **CHARLES GRAHL,** an individual, on behalf of
6                                                        himself and all others similarly situated

7                          <u>CERTIFICATE OF SERVICE BY MAILING</u>

8         I hereby certify that service of the foregoing Plaintiff Charles Grahl's Notice of

9    Depositions was made today by mailing a true and complete copy, postage-paid from Las

10   Vegas, NV, to the addressees shown, and via email, addressed to:

11                          Anthony L. Martin and Jill Garcia
                          OGLETREE DEAKINS NASH SMOAK & STEWARD, P.C.
12                          3800 Howard Hughes Pkwy Ste 1500
                          Las Vegas, NV 89169-5921
13                          Anthony.martin@ogletreedeakins.com
                          jill.garcia@ogletreedeakins.com
14
     Dated: June 15, 2016.                             _____
15                                                        An Employee of LAW OFFICES OF STEVEN J. PARSONS

16                                    <u>DEPOSITIONS</u>

17        Fed. R. Civ. P., Rule 30 – *Depositions by Oral Examination*, as amended 2007, provides

18   in pertinent part:

19   "(b)     Notice of the Deposition…

20        "(6)     Notice or Subpoena Directed to an Organization.  In its notice or subpoena, a

21   party may name as the deponent a public or private corporation, a partnership, an association,

22   a governmental agency, or other entity and must describe with reasonable particularity the

23   matters for examination.  The named organization must then designate one or more officers,

24   directors, or managing agents, or designate other persons who consent to testify on its behalf;

25   and it may set out the matters on which each person designated will testify.  A subpoena must

26   advise a nonparty organization of its duty to make this designation.  The persons designated

27   must testify about information known or reasonably available to the organization."

<u>DEPONENTS</u>

1.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of the factual basis for each admission, denial and affirmative defense in Circle K's Answer to Plaintiff's Complaint;

2.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of Circle K's responses to Plaintiff's Requests for Production served on February 9, 2015;

3.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of Defendant's policies, practices, and procedures for the keeping of employee personnel records, including, but not limited to, job descriptions; records relating to job offers, promotion, demotion, transfer, or layoff; rates of pay and other forms of compensation; pay and compensation information; records relating to other employment practices (including policy acknowledgments and agreements); letters of recognition, warnings, counseling, and disciplinary notices; performance evaluations and goal setting records; and termination records.

4.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of the organizational structure of Defendant's business (i.e. the chain of command or organizational hierarchy) from the executive level to the store clerk level;

5.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of the job descriptions for various positions in Defendant's organization, including, Store Manager, Assistant Store Manager, and Market Manager, and the job duties, tasks, and responsibilities related to those positions;

6.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of the actual day-to-day duties, responsibilities, and obligations of Store Managers, Assistant Store Managers, and Market Managers and how those duties, responsibilities, and obligations differ from the job descriptions for each job;

. . .

7.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of Defendants policies, practices, and procedures for the staffing of individual stores, including, but not limited to, the number of employees at each store, the scheduling of store employee shifts, the management of store employee schedules, discipline of store employees, and hiring and termination of store employees;

8.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of differences in day-to-day duties, obligations, and responsibilities of store employees, including, but not limited to, store managers, assistant managers and clerks;

9.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of differences in duties, obligations, and responsibilities of store employees, including, but not limited to, store managers, assistant managers and clerks as those duties, obligations, and responsibilities vary from store location to location, state to state, and region to region;

10.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of Defendant's timekeeping system or systems, including, but not limited to, the physical mechanism(s) by which employees clock-in and clock-out; information regarding software or programs used to input, track, or monitor employee hours; information related to any subcontractor(s) or company(ies) contracted to provide timekeeping services or equipment to Defendant;

11.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of Defendant's policies, practices, and procedures for the retention and storage of historical employee time records and work schedules;

12.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS KNOWLEDGEABLE** of which employees were required to clock-in and clock-out using Defendant's timekeeping system (i.e. what types or classes of employees or which job descriptions) and those employees job titles, duties, and responsibilities;

. . .

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*info@SJPlawyer.com*

Page 4 of 6

13.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of the time-editing feature(s) of Defendant's timekeeping system, including who has access to the time-editing feature (name, job title, job description, and authority to access the feature);

14.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of Defendant's compliance with applicable state and federal wage and hour laws as they relate to Defendant's timekeeping policies, practices, procedures, and systems.

15.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of Defendant's compliance with applicable state and federal wage and hour laws as they relate to the classification of employees and the payment or non-payment of overtime wages.

16.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of facts that support Defendant's claim that store managers are exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA")

17.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of the reclassification of store managers as non-exempt from the overtime provisions of the FLSA after the filing of Plaintiff's complaint in this case;

18.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of the July 31, 2014 Memorandum regarding "Change in Employment Status from Exempt Store Manager (Salaried) to Non-exempt Store Manager (Hourly)" and the analysis related to this memorandum and the bases used to justify the change in employment status. A copy of the Memorandum is attached hereto and incorporated herein as if set forth fully, here, as Exhibit "1."

19.   THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS **KNOWLEDGEABLE** of the August 28, 2014 Memorandum regarding "Change in Employment Status from Exempt Store Manager (Salaried) to Non-exempt Store Manager (Hourly)" and the analysis related to this memorandum and the bases used to justify the change in employment

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*info@SJPlawyer.com*

Page 5 of  6

1   status.  A copy of the Memorandum is attached hereto and incorporated herein as if set forth

2   fully, here, as Exhibit "2."

3       20.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

4   **KNOWLEDGEABLE** of Defendant's video surveillance system(s), specifically, regarding the

5   ability of that system or those systems to capture the act of employees beginning and or

6   ending their daily work, and Defendant's records retention policies for surveillance footage.

7       21.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

8   **KNOWLEDGEABLE** of Defendant's records maintenance and retention policies related to data

9   containing Store Managers' employment and identification information, including, but not

10  limited to, Store managers' names, addresses, telephone numbers, email addresses, social

11  security numbers, job titles, pay rates, days works, hours worked, and earnings.

12      Dated: Wednesday, June 15, 2016.

13                      LAW OFFICES OF STEVEN J. PARSONS

14                      /s/ Andrew L. Rempfer
                    ANDREW L. REMPFER

15                      Nevada Bar No. 8628

16                      Attorney for Plaintiff
                    **CHARLES GRAHL**

17

18

19

20

21

22

23

24

25

26

27

Law Offices of Steven J. Parsons
7201 W. Lake Mead Blvd., Ste. 108
Las Vegas, Nevada 89128-8354
(702)384-9900; fax (702)384-5900
info@SJPlawyer.com

Page 6 of  6

# Exhibit "2"

# Exhibit "2"

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV 89169
Telephone: 702.369.6800
Facsimile: 702.369.6888
www.ogletreedeakins.com

Anthony L. Martin
702.369.6801
anthony.martin@ogletreedeakins.com

July 19, 2016

*Via Email*
Andrew L. Rempfer
Law Offices of Steven J. Parsons
7201 W. Lake Mead Blvd., #108
Las Vegas, NV  008628

RE:    *Grahl, et al. v. Circle K Stores, Inc.: 30(b)(6) Notice and Outstanding Discovery
       Questionnaires*

Dear Andrew:

        This letter follows up on our in person conversation on Monday, June 27, 2016,
regarding Plaintiff's recent notice to take a 30(b)(6) deposition. Despite what you may have
seen on its website, we understand from our client that it is currently split into 7 Divisions.
Each of these divisions operates with relative autonomy with regard to the implementation of
programs, policies and operating procedures. Thus, as we discussed, it would be impractical for
Circle K to designate *a single witness* to testify regarding the majority of the 21 topics (most of
which contain multiple sub-topics) Plaintiff has designated. Moreover, as you are well aware,
the Rule does not require Circle K to designate a single individual to testify. Where the
deposition of a corporation or other entity is sought, the notice of deposition or subpoena is
directed to the entity itself (in this case, Circle K) and Circle K is obligated to produce the
"most qualified" person to testify on its behalf. *Mattel Inc. v. Walking Mountain Production*,
353 F.3d 792, 798, fn. 4 (9th Cir. 2003). Accordingly, Circle K can designate "one *or more*
officers, directors, or managing agents, or designate other persons who consent to testify on its
behalf; and it may set out the matters on which each person designated will testify." FRCP
30(b)(6); *Risinger v. SOC, LLC*, 306 F.R.D. 655, 663 (D. Nev. 2015)("the responding party is
required to produce one or more witnesses knowledgeable about the subject matter of the
noticed topics")(internal citations omitted); *See Ballentine v. Las Vegas Metropolitan Police
Department*, 2016 WL 2743504, * 5 (D. Nev. May 9, 2016)(*quoting Great Am. Ins. Co. of New
York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538-39 (D. Nev. 2008) ("The designating party
has a duty to designate more than one deponent if necessary to respond to relevant areas of
inquiry on the noticed topics … Rule 30(b)(6) is not designated to be a memory contest."));
*Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D.Kan.1999) (corporation must
produce "such number of persons as will satisfy the request"). Circle K is willing to do this,
and certainly wants to provide Plaintiff with the information he thinks he needs; however, it is

Atlanta  ▪  Austin  ▪  Berlin  (Germany)  ▪  Birmingham  ▪  Boston  ▪  Charleston  ▪  Charlotte  ▪  Chicago  ▪  Cleveland  ▪  Columbia  ▪  Dallas  ▪  Denver
Detroit  Metro  ▪  Greenville  ▪  Houston  ▪  Indianapolis  ▪  Jackson  ▪  Kansas  City  ▪  Las  Vegas  ▪  London  (England)  ▪  Los  Angeles  ▪  Memphis
Miami  ▪  Minneapolis  ▪  Morristown  ▪  Nashville  ▪  New  Orleans  ▪  New  York  City  ▪  Orange  County  ▪  Philadelphia  ▪  Phoenix  ▪  Pittsburgh
Portland  ▪  Raleigh  ▪  Richmond  ▪  St.  Louis  ▪  St.  Thomas  ▪  San  Antonio  ▪  San  Diego  ▪  San  Francisco  ▪  Stamford  ▪  Tampa  ▪  Torrance  ▪  Tucson  ▪  Washington

Andrew L. Rempfer, Esq.
July 19, 2016
Page 2

simply impractical for a single witness to be made knowledgeable regarding the various policies and practices in 7 different Divisions.

In that same vein, and in an effort to ensure our designated witnesses are properly prepared, we note two overarching concerns regarding Plaintiff's designated topics. First, the topics lack any temporal limitation. Second, many topics contain the language "including, but not limited to…" As you know, the Rule requires Plaintiff to designate topics with "reasonable particularity." *See Risinger v. SOC, LLC,* 306 F.R.D. 655, 663 (D. Nev. 2015). "[T]he party noticing a Rule 30(b)(6) deposition must take care to designate, with painstaking specificity, the particular subject areas that are to be covered." *Izzo v. Wal-Mart Stores, Inc.,* 2016 WL 409694, *2 (D. Nev. Feb. 2, 2016)(quoting *U.S. E.E.O.C v. Bank of Am.,* 2014 WL 7240134, at *5 (D. Nev. Dec. 18, 2014)). But the lack of any temporal limitation, as well as the "including, but not limited to" language, renders most of Plaintiff's topics not reasonably particular. *Reed v. Bennett,* 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task…. Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."); *see also Izzo,* 2016 WL 409694, * 3 (granting a Motion for Protective order where Plaintiff failed to justify the temporal scope of its 30(b)(6) deposition topic seeking testimony as to "overall maintenance" in Wal-Mart #2884 for a period of three (3) years. The Court limited the request to the maintenance policies that were in effect at the time of the accident.).

Defendant, therefore, asks that Plaintiff amend his notice to (1) clarify the time period for which he seeks information and (2) remove the "including, but not limited to" language or otherwise specify what additional information he seeks. *See Innomed Labs LLC v. Alza Corp.,* 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (30(b)(6) subpoena that requested a person to be deposed about documents "including but not limited to" the areas specified was insufficiently particularized and therefore failed to meet the rule's requirements).

Additionally, we provide the following breakdown of Plaintiff's designated topics, along with our understanding of the information you are seeking, as well as any requests for clarification, objections, and/or proposals for limiting overly broad topics.

| No. | Topic | Response |
|---|---|---|
| 1 | The factual basis for each admission, denial and affirmative defense in Circle K's Answer to Plaintiff's Complaint. | Defendant's answer responds to 69 separate allegations (many of which are mere legal conclusions) and contains 20 defenses. Thus, this topic is extremely broad and vague and does not meet the "reasonable particularity" requirement of FRCP 30(b)(6). *See TV Interactive Data Corp. c. Sony Corp.,* 2012 WL 1413368, *1 (N.D. Cal. April 23, 2012)(a 30(b)(6) request to produce a corporate witness regarding *all* facts and contentions for each affirmative defense is too vague.) "No one human being can be expected to set forth, especially orally in deposition, a fully reliable |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 3

| | | |
|---|---|---|
| | | and sufficiently complete account of the bases for the contentions and positions taken...." *Id.*, at \*2; *See also Catt v. Affirmative Ins. Co.*, 2:08-CV-243-JVB-PRC, 2009 WL 1228605, at \*7 (N.D. Ind. Apr. 30, 2009). |
| | | Moreover, this topic asks a witness to opine on legal theories and legal conclusions and, therefore, invades the mental impressions of counsel. |
| | | However, if there are particular responses or defenses Plaintiff would like addressed, please let us know. |
| 2 | Circle K's responses to Plaintiff's Requests for Production served on February 9, 2015. | Plaintiffs have served 30 RFPs on Defendant. Thus, this topic does not meet the "reasonable particularity" requirement of FRCP 30(b)(6). *See Risinger v. SOC, LLC,* 306 F.R.D. 655, 663 (D. Nev. 2015)("The party seeking discovery through a Rule 30(b)(6) deposition is required to describe with reasonable particularity the matters on which the examination is requested.")(internal quotations omitted.) Moreover, Defendant's responses to requests for production were drafted by counsel. Thus, this topic improperly trespasses into areas of work product and attorney-client privilege. *Krasney v. Nationwide Mut. Ins. Co.,* 2007 WL 4365677, \*3 (D. Conn. Dec. 11, 2007). Further, Defendant's objections and responses speak for themselves. |
| | | However, if there are particular responses Plaintiff would like addressed, please let us know. |
| 3 | Defendant's policies, practices, and procedures for the keeping of employee personnel records, including, but not limited to, job descriptions; records relating to job offers, promotion, demotion, transfer, or layoff; rates of pay and other forms of compensation; pay and compensation information; records relating to other employment practices (including policy acknowledgments and agreements); letters of recognition, warnings, counseling, and disciplinary notices; performance evaluations and goal setting records; and termination records. | To the extent that this topic asks Defendant to prepare a witness to testify to any informal "practices" or "procedures" that may be used in the thousands of Defendant's stores, Defendant objects as overly broad and unduly burdensome. |
| | | Moreover, Defendant does not understand the relevance of many of the mentioned records, such as termination records, to this action. However, it will produce a witness(es) to testify to the substance of any such employee personnel record retention policies, if they exist, in each of its divisions. |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 4

| 4 | The organizational structure of Defendant's business (i.e. the chain of command or organizational hierarchy) from the executive level to the store clerk level. | This topic's use of the phrase "executive level" is vague and ambiguous. Defendant will have a witness(es) prepared to testify as to the organizational structure of each of its eight divisions, subject to an appropriate time limitation. To the extent this topic seeks other information, please clarify. |
|---|---|---|
| 5 | Job descriptions for various positions in Defendant's organization, including, Store Manager, Assistant Store Manager, and Market Manager, and the job duties, tasks, and responsibilities related to those positions. | Defendant notes that it does not employ "Assistant Store Managers." Defendant assumes Plaintiff is referring to "store assistants." <br><br> Defendant will have a witness(es) prepared to testify as to the substance of the written job descriptions produced as CONFIDENTIALCIRCLEK024515 (Store Assistant); CONFIDENTIALCIRCLEK024270-024273 (Store Managers), as well as the written Market Manager job description, subject to an appropriate time limitation. To the extent this topic seeks other information, please clarify so that we may have the witness prepared. |
| 6 | The actual day-to-day duties, responsibilities, and obligations of Store Managers, Assistant Store Managers, and Market Managers and how those duties, responsibilities, and obligations differ from the job descriptions for each job. | Defendant objects to this request as overly broad and unduly burdensome. No individual could be prepared to testify as to the "actual" day-to-day duties of thousands of employees. Similarly, it would be impossible to prepare any witness on the myriad of ways any one individual's day-to-day tasks may vary from the written job description. Such individual variations differ from division-to-division, market-to-market, and store-to-store depending on factors such as the size and volume of a store, individual preferences/discretion, store location, and the number of staff members employed in a store. |
| 7 | Defendant's policies, practices, and procedures for the staffing of individual stores, including, but not limited to, the number of employees at each store, the scheduling of store employee shifts, the management of store employee schedules, discipline of store employees, and hiring and termination of store employees. | To the extent this topic asks Defendant to prepare a witness to testify to any informal "practices" or "procedures" that may be used in thousands of Defendant's stores, Defendant objects as overly broad and unduly burdensome. The manner in which staffing and employee relations issues are handled will vary from division-to-division, market-to-market, and store-to-store depending on factors such as the size and volume of a store, individual preferences/discretion, store location, and the number of staff members employed in a store. |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 5

| | | |
|---|---|---|
| | | However, Defendant will prepare witnesses to testify regarding the substance of any such policies in each of its 7 divisions, subject to an appropriate time limitation. To the extent this topic seeks other information, please clarify so that we may have the witness prepared. |
| 8 | Differences in day-to-day duties, obligations, and responsibilities of store employees, including, but not limited to, store managers, assistant managers and clerks. | Defendant notes that it does not employ anyone with the title "Assistant Store Manager." Defendant assumes Plaintiff is referring to "store assistants." Defendant objects to this request as overly broad and unduly burdensome. No individual could be prepared to testify as to the differences in day-to-day duties of thousands of employees. Defendant will, however, have witnesses prepared to testify as to the differences between the various written job descriptions for these positions in each of its 7 divisions. |
| 9 | Differences in duties, obligations, and responsibilities of store employees, including, but not limited to, store managers, assistant managers and clerks as those duties, obligations, and responsibilities vary from store location to location, state to state, and region to region. | Defendant refers Plaintiff to its objection and response regarding Topic 8. |
| 10 | Defendant's timekeeping system or systems, including, but not limited to, the physical mechanism(s) by which employees clock-in and clock-out; information regarding software or programs used to input, track, or monitor employee hours; information related to any subcontractor(s) or company(ies) contracted to provide timekeeping services or equipment to Defendant. | Defendant objects to this topic because it has no relevance to the action. As Plaintiff states in his Complaint, Defendant did not maintain time records regarding his, or other exempt employees, time worked. |
| 11 | Defendant's policies, practices, and procedures for the retention and storage of historical employee time records and work schedules. | Defendant objects to this topic because it has no relevance to the action. As Plaintiff states in his Complaint, Defendant did not maintain time records regarding his, or other exempt employees, time worked. Thus, storage of time records is irrelevant. *See Searcy v. Esurance Company,* 2015 WL 9216573, *3 (D. Nev. Dec. 16, 2015)(granting a motion for protective order on Plaintiff's 30(b)(6) topics that are not relevant to the Complaint.) Defendant will, however, prepare witnesses to testify regarding the substance of any policies in each of its 7 divisions regarding storage of employee schedules. |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 6

| | | |
|---|---|---|
| | | However, to the extent this topic asks Defendant to prepare a witness to testify to any informal "practices" or "procedures" that may be used in thousands of Defendant's stores, Defendant objects as overly broad and unduly burdensome. |
| 12 | Which employees were required to clock-in and clock-out using Defendant's timekeeping system (i.e. what types or classes of employees or which job descriptions) and those employees job titles, duties, and responsibilities. | Defendant objects to this topic because it has no relevance to the action. As Plaintiff states in his Complaint, Defendant did not maintain time records regarding his, or other exempt employees, time worked. *See Searcy,* 2015 WL 9216573 at *3 (granting a motion for protective order on Plaintiff's 30(b)(6) topics that are not relevant to the Complaint.) ; *see also Stransky v. HealthONE of Denver, Inc.,* 11-CV-02888-WJM-MJW, 2013 WL 140632, at *2 (D. Colo. Jan. 11, 2013) (granting protective order regarding topics relating to automatic meal break deduction where such deductions were unrelated to any allegations in Complaint). <br><br> Moreover, this topic's failure to identify any particular group of employees renders it not reasonably particular as required by the Rule. |
| 13 | Time-editing feature(s) of Defendant's timekeeping system, including who has access to the time-editing feature (name, job title, job description, and authority to access the feature). | Defendant objects to this topic because it has no relevance to the action. As Plaintiff states in his Complaint, Defendant did not maintain time records regarding his, or other exempt employees, time worked. Moreover, there is no allegation that Defendant improperly edited the time of Plaintiff or any opt-in Plaintiff. *See Searcy,* 2015 WL 9216573, *3 (granting a motion for protective order on Plaintiff's 30(b)(6) topics that are not relevant to the Complaint.) ; *see also Stransky v. HealthONE of Denver, Inc.,* 11-CV-02888-WJM-MJW, 2013 WL 140632, at *2 (D. Colo. Jan. 11, 2013) (granting protective order regarding topics relating to automatic meal break deduction where such deductions were unrelated to any allegations in Complaint). |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 7

| | | |
|---|---|---|
| 14 | Defendant's compliance with applicable state and federal wage and hour laws as they relate to Defendant's timekeeping policies, practices, procedures, and systems. | Defendant objects to this topic because it has no relevance to this action. As Plaintiff states in his Complaint, Defendant did not maintain time records regarding his, or other exempt employees, time worked. *See Searcy*, 2015 WL 9216573 at *3 (granting a motion for protective order on Plaintiff's 30(b)(6) topics that are not relevant to the Complaint.) ; *see also Stransky v. HealthONE of Denver, Inc.*, 11-CV-02888-WJM-MJW, 2013 WL 140632, at *2 (D. Colo. Jan. 11, 2013) (granting protective order regarding topics relating to automatic meal break deduction where such deductions were unrelated to any allegations in Complaint). Defendant also objects to this topic use of the term "applicable" as vague, rendering it not reasonably particular as required by Rule.<br><br>Moreover, this topic impermissibly asks a witness to opine on legal theories and legal conclusions and, therefore, invades the mental impressions of counsel. |
| 15 | Defendant's compliance with applicable state and federal wage and hour laws as they relate to the classification of employees and the payment or non-payment of overtime wages. | Defendant objects to this topic as overly broad to the extent that it seeks information for employees other than store managers. Classification decisions of other employees have no relevance to this action. Defendant also objects to this topic's use of the term "applicable" as vague, rendering it not reasonably particular as required by the Rules. Moreover, this topic impermissibly asks a witness to opine on legal theories and legal conclusions and, therefore, invades the mental impressions of counsel. *King v. U.S.*, 119 Fed. Cl. 277, 285 (Fed. Cl. 2014).<br><br>Defendant will, however, prepare witnesses to testify regarding the facts that support their respective decision in each of its 7 divisions to classify store managers as exempt or non-exempt, subject to an appropriate time limitation. |
| 16 | Facts that support Defendant's claim that store managers are exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"). | Defendant will prepare a witness(es) to testify regarding this topic in each of its 7 divisions, subject to an appropriate time limitation. |
| 17 | Reclassification of store managers as non-exempt from the overtime provisions of the FLSA after the filing of Plaintiff's complaint in | Defendant objects to this topic because it seeks inadmissible evidence on a subsequent remedial measure. *Palmer v. Big Lots Stores, Inc.*, 3:14-CV- |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 8

| | | |
|---|---|---|
| | this case. | 276, 2014 WL 3895698, at *2 (E.D. Va. Aug. 8, 2014) (striking topics that sought information related to remedial measures because they were not likely to lead to admissible evidence).<br><br>Defendant will, however, prepare witnesses to testify regarding the facts that support their respective decision in each of its 7 divisions to classify store managers as exempt or non-exempt, subject to an appropriate time limitation.  Please also see response to Topic 16. |
| 18 | July 31, 2014 Memorandum regarding "Change in Employment Status from Exempt Store Manager (Salaried) to Non-exempt Store Manager (Hourly)" and the analysis related to this memorandum and the bases used to justify the change in employment status. | Defendant objects to this topic because it seeks inadmissible evidence on a subsequent remedial measure.  *Palmer v. Big Lots Stores, Inc.*, 3:14-CV-276, 2014 WL 3895698, at *2 (E.D. Va. Aug. 8, 2014) (striking topics that sought information related to remedial measures because they were not likely to lead to admissible evidence).<br><br>Defendant will, however, prepare witnesses to testify regarding the facts that support their respective decision in each of its 7 divisions to classify store managers as exempt or non-exempt, subject to an appropriate time limitation.  Please also see response to Topic 16. |
| 19 | August 28, 2014 Memorandum regarding "Change in Employment Status from Exempt Store Manager (Salaried) to Non-exempt Store Manager (Hourly)" and the analysis related to this memorandum and the bases used to justify the change in employment status. | Defendant objects to this topic because it seeks inadmissible evidence on a subsequent remedial measure.  *Palmer v. Big Lots Stores, Inc.*, 3:14-CV-276, 2014 WL 3895698, at *2 (E.D. Va. Aug. 8, 2014) (striking topics that sought information related to remedial measures because they were not likely to lead to admissible evidence).<br><br>Defendant will, however, prepare witnesses to testify regarding the facts that support their respective decision in each of its 7 divisions to classify store managers as exempt or non-exempt, subject to an appropriate time limitation.  Please also see response to Topic 16. |
| 20 | Defendant's video surveillance system(s), specifically, regarding the ability of that system or those systems to capture the act of employees beginning and or ending their daily work, and | A witness(es) will be prepared to testify on this topic, subject to appropriate temporal limitations. |

Andrew L. Rempfer, Esq.
July 19, 2016
Page 9

| | | |
|---|---|---|
| | Defendant's records retention policies for surveillance footage. | |
| 21 | Defendant's records maintenance and retention policies related to data containing Store Managers' employment and identification information, including, but not limited to, Store managers' names, addresses, telephone numbers, email addresses, social security numbers, job titles, pay rates, days works, hours worked, and earnings. | A witness(es) will be prepared to testify on this topic, subject to appropriate temporal limitations. |

Finally, to date, Defendant has not received a single discovery response from any of the approximately 245 Plaintiffs served with a questionnaire. Please let us know when we can expect these responses.

Best regards,

Anthony L. Martin

Exhibit "3"

Exhibit "3"



STEVEN J. PARSONS
ANDREW L. REMPFER
JOSEPH N. MOTT
TEL: (702) 384-9900
FAX: (702) 384-5900
Info@SJPlawyer.com

LAW OFFICES OF
**STEVEN J. PARSONS**
10091 PARK RUN DR STE 200
LAS VEGAS, NV 89145-8868

Thursday, July 21, 2016

by email
anthony.martin@ogletreedeakins.com
original by USPS

Anthony Martin
OGLETREE DEAKINS
3800 Howard Hughes Pkwy Ste 1500
Las Vegas NV 89169-5921

Re: <em>Grahl, et al. v. Circle K Stores, Inc.</em>;<br>U.S. District Court, District of Nevada; Case No. 2:14-cv-305-RFB-(VCF)

Dear Tony:

I write in response to your July 19, 2016 letter regarding our request for depositions by way of our Fed. R. Civ. P. 30(b)(6) Notice. Please consider this letter our request to meet and confer to further discuss the contentions contained in your letter. Such a meaningful meeting is a requirement of any attempt to resolve a discovery dispute. See LR 26-7(b) – Discovery Motions; and LR 16.1-21 – Good Faith Participation.

It will be helpful to us all – perhaps, the Court, too – to note that a common theme in your arguments seems to be that it is "difficult" for Circle K to produce someone knowledgeable because of the size and the manner of organization of the Company. Such a problem that is Circle K's, alone, and is a direct outfall of the way the Company has chosen to do business. Frankly, that is inconsequential to us – the Rule clearly contemplates that dilemma your client faces by allowing for the designation of more than one person. We will not be penalized or even dissuaded by your attempt to limit our discovery because Circle K has chosen to attempt to divest itself of knowledge and decentralize itself to avoid having to be held accountable.

Ultimately, despite your objections and contentions, most of which fly in the face of well established law, Circle K's obligation clearly is to designate and prepare witnesses to testify on the Company's behalf for each of the topics in our notice. The level to which Circle K prepares its designees is up to the Company. However, if Circle K's designees are _not_ prepared to respond fully to our 30(b)(6) topics, notwithstanding the ineffective objections in your letter, we will move the court for sanctions. We have litigated these very issues in this District successfully many times, and we will not shy away from doing so in this case as well.

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl, et al., v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, July 21, 2016
Page 2 of 7

While I disagree with nearly every contention in your letter, I agree that we need to specify temporal limits – applicable ranges of dates – for each topic and I have done so on the revised Fed. R. Civ. P. 30(b)(6) Notice (the "revised Notice") which you will receive in the next day or so.  (We also added an additional Topic – Topic 15 – in the revised Notice.)

Similarly, while I do not agree with your contention that "including, but not limited to" language is *per se* insufficiently particularized, I have nonetheless removed such language from the revised Notice.

The rest of your contentions, generally speaking, are contrary to the well-established law in this District.  Candidly, in reading your letter, it struck me that you have clearly outlined for the Court the wilfulness with which you propose to _not_ comply with the Rule.

Many of your responses to our topics also contain declarations that portend that you will prepare someone to respond only partially, or only to prepare within your attempt to paraphrase the topic, to seek to minimize the request or leave out certain areas of inquiry. That is totally antithetical to the expressed purpose of Rule 30(b)(6) and is not tolerated by Courts in this District.

For example, in your response to Topic 5, you state that you will present someone knowledgeable of job descriptions but you do not state that you will prepare a witness to testify as to the job duties, tasks, and responsibilities related to the positions, which further areas of inquiry _are_ clearly included in Topic 5.   Please understand that your interpretations or restatements of the topics are ineffectual and have no bearing on Circle K's duty to present witnesses knowledgeable regarding every subpart of every topic.  We have found that the Court has no problem enforcing our Notices and we have never been on the losing side of the arguments you present in your letter based on our notices.  Others' earlier attempts to re-cast our requests – as you are trying here – has proven to be a costly gambit that has been repudiated by the Court and has subjected those defendants to sanctions.

Federal Rule of Civil Procedure 30(b)(6) "imposes an affirmative duty on a party to designate a witness with knowledge of the areas of examination identified by the opposing party." *United States EEOC v. Caesars Entm't., Inc.*, 237 F.R.D. 428, 434 (D. Nev. 2006). If necessary, a designating party must designate _multiple witnesses_ to respond completely to the topics of inquiry on a Rule 30(b)(6) deposition notice. *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 538-39 (D. Nev. 2008).  Circle K's obligation to educate designees "encompasses _all_ information reasonably available to the responding organization", which, by its very nature, "imposes considerable burdens" on the responding organization. *Lagunas-Salazar v. Summerlin*, No. 2:12-cv-867-APG-VCF, 2014 U.S. Dist. LEXIS 11436, at *7 (D. Nev. Jan. 29, 2014) (Emphasis added).

Anthony Martin, Ogletree Deakins
Re: *Grahl, et al., v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, July 21, 2016
Page 3 of 7

Moreover, the "reasonable particularity" requirement of the rule "facilitates, rather than hampers, discovery" and "imposes an obligation on a corporation to provide someone who can indeed answer the particular questions presaged by the notice" and "does not limit what can be asked at deposition." *United States EEOC v. Caesars Entm't, Inc*, 237 F.R.D. 428, 432 (D. Nev. 2006).  In short, the "reasonable particularity" provision in the rule is not intended to be used as a defensive foil to limit the discovery that can be obtained.

The balance of this letter will address your specific contentions, topic by topic:

**Topic 1**:   You contend that topic 1 does not meet the "reasonable particularity" requirement, stating: "… this topic is broad and vague and does not meet the reasonable particularity requirement of the (rule)."  You note that there are a total of 69 allegations and 20 affirmative defenses in your client's Answer.  You further contend it is not appropriate because it "…invades the mental impressions of counsel."

There is nothing remotely broad or vague about this topic.  By the very specific language of the Notice – and, as well evidenced in your response – we both agree that it is designed to allow us to learn about your "…69 separate allegations… and … 20 defenses."

It specifically requests that Circle K produce a witness knowledgeable of the *facts* upon which it based its assertions and defenses, each of which is set forth distinctly and specifically in your client's Answer.  There is no lack of clarity about what we seek.  We are absolutely entitled to learn these facts and there is no privilege that protects facts.  Notably, in prior uses of this same exact contention, upon hearing those defendants' objections, two judges in this District commented something on the order of "how else can Plaintiff learn all of this?"

Notably, this District's courts, in dealing with this exact issue in *EEOC v. Caesars* held that the designating party must designate a witness knowledgeable regarding the facts supporting its positions and defenses and that neither the attorney-client privilege nor the work-product doctrine precluded these areas of inquiry. *See id*. at 432-35.

You cite inappropriately the Northern District of California case, out of context that "…no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of the bases for the contentions and positions taken."  Clearly, you have missed the Rule's requirement that mandates you to appoint as many people as you need to reliably cover the subject of the Notice.  We don't expect just one deponent – that conjured position is countermanded by the Notice and the Rule.  We suggest you revisit your contention, as it is, at best, inartful and not in keeping with the Rule.

**Topic 2**:   As with Topic 1, you contend that Topic 2 does not meet the "reasonable

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl, et al., v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, July 21, 2016
Page 4 of 7

particularity" requirement of the rule, is overly broad and vague, and that it "improperly trespasses into areas of work product and attorney-client privilege."

Just like with Topic 1, our request is not even remotely broad or vague and specifically requests that Circle K designate someone who is knowledgeable of each the company's responses to our specific discovery requests. No matter who drafted the responses, there must be facts underlying each response and there is no basis for you to refuse to produce a witness to testify as to facts. You *must* produce the witness even if the witness learned the facts only from an attorney. *See id*. at 433.

<u>Topic 3</u>: You contend that this request is overly broad and unduly burdensome to the extent that it requires Defendant to prepare a witness to testify regarding any informal practices or procedures.

However, your objection is not well taken, as the topic does not request a witness knowledgeable of any "informal" practices or procedures for each of thousands of stores, but, instead, simply requests a witness knowledgeable of Defendant's policies, practices, and procedures for several areas of inquiry, which request is clearly a permitted practice in this District.

<u>Topic 4</u>: You contend that the phrase "executive level" is vague and ambiguous.

The term executive is a commonly used term that is defined simply as "a person with senior managerial responsibility in a business organization." It is commonly used in business to refer to officers of a company, including the Chief Executive Officer, Chief Operating Officer, Chief Accounting Officer, Presidents, Vice-Presidents, etc. We did not merely request a witness that is, as you describe, "prepared to testify as to the organizational structure of each of its 8 divisions[1]." Instead, we asked for a designated deponent knowledgeable of the "organizational structure of defendant's business" from the highest level to the lowest level. Such information must be readily known by your client, and we are entitled to learn those facts in deposition.

<u>Topic 5</u>: You contend that your client does not employ "Assistant Store Managers."

Despite this contention, however, your client has produced various documents and

---

[1]Your assertion here that there are eight divisions is directly contrary to your assertion in the first paragraph of your letter that there are seven divisions. Please clarify which of these divergent positions is accurate.

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl, et al., v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, July 21, 2016
Page 5 of 7

internal communications that use the terms "assistant store manager", "store assistant", and "store assistant manager," all seemingly interchangeably.

Additionally, your note that you will "have a witness prepared to testify as to the substance of the written job descriptions..." is an improvident attempt to re-characterize the topic as we have noticed it.  The topic does not call for someone merely knowledgeable of the "substance of the written job descriptions", but, instead, calls for a witness knowledgeable of the written job descriptions *and* the job duties, tasks, and responsibilities related to those positions.  We expect that the designee for this topic (and all of our topics) will be prepared to fully testify as to each and every aspect of the topic – not simply as to your impermissibly recast and interpreted topics.

Topic 6:  You contend that it would be impossible to prepare a witness on this topic as there are thousands of employees and because the actual duties related to the various job positions vary based on several factors.

Your characterization of this topic is again different than the actual topic.  Topic six simply requests someone knowledgeable of the actual duties related to specific positions as those actual duties contrast from the duties in the job descriptions.

Topic 7:  You contend that this request is overly broad and unduly burdensome to the extent that it requires Defendant to prepare a witness to testify regarding any informal practices or procedures and to the extent that those policies, practices, and procedures vary based on several factors.

Your objection is inappropriate as the topic does not request a witness knowledgeable of any "informal" practices or procedures for each of thousands of stores, but, instead, simply requests a witness knowledgeable of Defendant's policies, practices, and procedures for several areas of inquiry.

Topics 8 and 9:  Again, you contend that your client does not employ "Assistant Store Managers."  Despite this contention, your client has produced various documents and internal communications that use the terms "assistant store manager", "store assistant", and "store assistant manager" interchangeably.  We also rely on our further response to Topic 5, above.

Topics 10 through 14 (Generally):  You object to each of these topics as irrelevant based on the fact your client did not maintain time records.

Within Fed. R. Evid. 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl, et al., v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, July 21, 2016
Page 6 of 7

in determining the action."  This case deals with Circle K's misclassification of employees and failure to pay overtime.  Employees' hourly records are directly relevant to the central issues in this case.  Your client's purposeful failure to maintain these records does not make them irrelevant.  Your attempt to classify such clearly significant records as irrelevant is at best disingenuous.

Topic 11:  You contend that this request is overly broad and unduly burdensome to the extent that it requires Defendant to prepare a witness to testify regarding any informal practices or procedures.

Your objection is inappropriate as the topic does not request a witness knowledgeable of any "informal" practices or procedures for each of thousands of stores, but, instead, simply requests a witness knowledgeable of Defendant's policies, practices, and procedures for several areas of inquiry.

Topic 12:  You contend that our failure to identify a particular group of employees renders this topic "not reasonably particular."

To the contrary, this contention is _very_ particularly requesting someone that is knowledgeable of which categories of employees use a timekeeping system.  If we had the ability to state which categories of employees these are, we would not need to ask your client those questions.

Topics 18 and 19:  You contend that these topics seek evidence that is inadmissible based on the reclassification being a subsequent remedial measure.

Several courts across the country have held that in the context of an FLSA lawsuit, subsequent reclassification of employees can be evidenced against the reclassifying party with respect to both the company's classification policies and plaintiffs' actual classification during the relevant period.  Moreover, most courts have been very slow to extend the subsequent remedial measures doctrine beyond the area of tort law.  Here, whether it is ultimately evidenced again your client, is not itself any bar to discovering the practice and changes.  We are entitled to learn all of that.

Despite your attempt to re-characterize several of the topics and your objections that are contrary to the clear law in this District, we are prepared to go forward on the 2nd and 3rd of August subject to receiving the designee list in advance of those depositions.  However, as we have learned in each of our earlier cases where we needed the Court's intervention thereafter, we will burn a great amount of our professional time and money in expenses to conduct these depositions.  If they fall short of the requirement of the Rule, we will fervently

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl, et al., v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, July 21, 2016
Page 7 of 7

seek redress from the Court – both as to expense and sanctions – if you do not more carefully prepare witnesses adequate to comply with your client's obligations within the Rule.

I welcome your further response on these issues and look forward to receiving your list of Circle K's designees for each of our topics.

Sincerely,

LAW OFFICES OF STEVEN J. PARSONS

/s/
STEVEN J. PARSONS

SJP.jnm

c:      client

# Exhibit "4"

# Exhibit "4"

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
*Attorneys at Law*
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV 89169
Telephone: 702.369.6800
Facsimile: 702.369.6888
www.ogletreedeakins.com

# Ogletree
# Deakins

Anthony L. Martin
702.369.6801
anthony.martin@ogletreedeakins.com

August 5, 2016

*Via Email*
Steven J. Parsons, Esq.
Andrew L. Rempfer, Esq.
Law Offices of Steven J. Parsons
10091 Park Run Drive, Suite 200
Las Vegas, NV 89169

RE:    *Grahl, et al. v. Circle K Stores, Inc.*: 30(b)(6) Depositions

Dear Steven and Andrew:

This letter is in response to your August 1, 2016 letter wherein Plaintiff's requested a complete list of designees and 30(b)(6) topics the designees will testify to. We previously provided that the following deponents are prepared to discuss the following deposition topics as outlined in the Deposition Notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, consistent with and subject to the objections that were served on Plaintiff's counsel on July 19, 2016:

- Kim Hoppa (Director of Human Resources, Training and Loss Prevention for the Arizona Division) - topics 4-9, and 15-19; portions of topics 10, 11, 12, and 13 (understanding that she will be able to attest to specific issues related to the Arizona Division, with additional witnesses to be designated accordingly for these topics);

- Linda Prince (HRIS Payroll Manager and Custodian of Records for the "epiK" and other personnel management document systems) - portions of topics 3 (as it pertains to document retention - electronically stored documents and paper files), 11 (as it pertains to time records) and 14 (as it pertains to system updates regarding mathematical formulaic changes to the relevant systems); and

- Ginger Brown (Manager, IT-HR/Payroll Systems) - topic 21 and portions of topics 3 (as it pertains to data retention - separate and apart from document retention), 10, and 14.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver
Detroit Metro ▪ Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis
Miami ▪ Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh
Portland ▪ Raleigh ▪ Richmond ▪ St. Louis ▪ St. Thomas ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Stamford ▪ Tampa ▪ Torrance ▪ Tucson ▪ Washington

Steven J. Parsons, Esq.
Andrew L. Rempfer, Esq.
August 5, 2016
Page 2

       In addition to the above-referenced deponents, Circle K has identified the following representatives and their respective deposition topics:

- Joyce Clemmons (former HRD and current HRM for the Gulf Coast Division-Pensacola, FL) - portions of topics 5-14 and 17 (understanding that she will be able to attest to specific issues related to the Gulf Coast Division);

- Christie O'Halloran (former HRD and current HRM for the Florida Division-Tampa, FL) - portions of topics 5-14 and 17 (understanding that she will be able to attest to specific issues related to the Florida Division);

- Sandra Farthing (HRD for the West Coast Division-Corona, CA) - portions of portions of topics 5-14 and 17 (understanding that she will be able to attest to specific issues related to the West Coast Division);

- Paula Dill (Crowe) (former HRD-Southeast Division retired and residing in Oklahoma) - portions of topics 5-14 and 17 (understanding that she will be able to attest to specific issues related to the Southeast Division);

- Troy Beatty (HRM Southwest Division-Dallas, TX) - portions of topics 5-14 and 17 (understanding that he will be able to attest to specific issues related to the Southwest Division); and

- Carlos Estrada (former Loss Prevention Manager and current Regional Operations Director for the Arizona Division-Tucson, AZ) - topic 20.

Circle K is working on identifying a corporate representative(s) to address topics 1 and 2[1] and will provide the name(s) at a later date and time.

---

[1] Circle K maintains its position that deposition topics 1 and 2 are contention topics and premature at this early stage of discovery, but will nevertheless endeavor to designate and present appropriate witnesses for these two topics.

Steven J. Parsons, Esq.
Andrew L. Rempfer, Esq.
August 5, 2016
Page 3


Additionally, please provide us with your availability to meet and confer as to the objections raised in our July 19, 2016 correspondence and your July 21, 2016 response. At that time, we would also like to meet and confer about the Answer and affirmative defenses subject to topic 1 as well as each response to requests for production of documents subject to topic 2. We believe it is possible to eliminate a significant number of these in an effort to streamline the deposition for topics 1 and 2. We ask that you provide your availability to meet and confer no later than August 12, 2016.

Best regards,

Anthony L. Martin

ALM:dbs

cc:    Jon Tostrud (via email jtostrud@tostrudlaw.com)
       Anthony Carter (via email acarter@tostrudlaw.com)
       Erik Langeland (via email elangeland@langelandlaw.com)

# Exhibit "5"

# Exhibit "5"

**Grahl v. Circle K**
**Circle K 30(b)(6) Designees**

| Designee | Topic | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| Kim Hoppa | | | | C | C | C | C | C | C | P | P | P | P | C | | C | C | C | C | C | | |
| Linda Prince | | | P | | | | | | | | P | | | P | | | | | | | | |
| Ginger Brown | | | P | | | | | | | P | | | | P | | | | | | | | C |
| Joyce Clemmons | | | | | P | P | P | P | P | P | P | P | P | | | | | P | | | | |
| Christie O-Halloran | | | | | P | P | P | P | P | P | P | P | P | | | | | P | | | | |
| Sandra Farthing | | | | | P | P | P | P | P | P | P | P | P | | | | | P | | | | |
| Paula Dill | | | | | P | P | P | P | P | P | P | P | P | | | | | P | | | | |
| Troy Beatty | | | | | P | P | P | P | P | P | P | P | P | | | | | P | | | | |
| Carlos Estrada | | | | | | | | | | | | | | | | | | | | | C | |

Complete
Partial

# Exhibit "6"

# Exhibit "6"



LAW OFFICES OF
**STEVEN J. PARSONS**
10091 PARK RUN DR STE 200
LAS VEGAS, NV 89145-8868

*STEVEN J. PARSONS*
*ANDREW L. REMPFER*
*JOSEPH N. MOTT*
TEL: (702) 384-9900
FAX: (702) 384-5900
INFO@SJPLAWYER.COM

Thursday, October 6, 2016

by email
anthony.martin@ogletreedeakins.com
original by USPS

Anthony Martin
OGLETREE DEAKINS
3800 Howard Hughes Pkwy Ste 1500
Las Vegas NV 89169-5921

Re: *Grahl, et al. v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada; Case No. 2:14-cv-305-RFB-(VCF)

Dear Tony:

I write to address discovery related issues about which we must meet-and-confer pursuant to Local Rule 26-7.  In fact, you may consider this letter as our fulfilment of the requirement of meeting and conferring.  Simply let us know we're unable to resolve the dispute and we will file for the Court's consideration of our points.

The outstanding issues relate primarily to your list of nine (9) individuals your client has designated to testify as Circle K's 30(b)(6) witnesses, upon our Notice served earlier.  I also want to address some of the concerns you expressed in your October 4, 2016, letter.

As you know, "the persons designated must testify about information known or reasonably available to the organization." *Fed. R. Civ. P., Rule 30(b)(6)*.  The purpose of Rule 30(b)(6), "is to streamline the discovery process."  *Great am. Ins. Co. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534, 539 (D. Nev. 2008).  Rule 30(b)(6) is, "a discovery device designed to avoid the bandying by corporations where individual officers or employees disclaim knowledge of facts clearly known to the corporation."  *Id.*  Another purpose, "is to curb any temptation by the corporation to shunt a discovering party from 'pillar to post' by presenting deponents who each disclaim knowledge of facts known to someone in the corporation."  *Id.*

It is clear from your designations, particularly the duplicative and multiple designees for single topics, that you have no intention of streamlining the discovery process in this case.  We believe not only is that evident, it will be evident to the Court, as well.

While there is no explicit limit on the number of designees a company may designate within 30(b)(6), companies must, "make a conscientious good-faith endeavor to designate the

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl et al. v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, October 6, 2016
Page 2 of 5

persons having knowledge of the matters sought…and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed…as to the relevant subject matters." *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989) (quoting *Mitsui & Co. v. Puerto Rico Waters Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981)).

The Company is attempting to compartmentalize its 30(b)(6) designees based on their personal knowledge of the specified topics; however, "a Rule 30(b)(6) witness need not have personal knowledge of the designated subject matter." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.,* 497 F. 3d 1135, 1147 (10th Cir. 2007); *see generally* Federal Civil Rules Handbook, 2012 Ed., at p. 838 ("the individual will often testify to matters outside the individual's personal knowledge"). "(T)he corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects." *Great. Am.,* 251 F.R.D. at 540. "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Wilson v. Lakner,* 228 F.R.D. 524 (D. Md. 2005). "The duty extends to matters reasonably known to the responding party." *Fowler v. State Farm Mut. Auto. Ins. Co.,* No. 07-00071 SPK-KSC, 2008 U.S. Dist. LEXIS 93263, 2008 WL 4907865, at *4 (D. Haw. 2008). Thus, even if an HR rep from one division does not have personal knowledge of the exact day-to-day operations of another division, it is Circle K's duty to educate that witness so that as few as possible depositions are necessary.

The party responding to a 30(b)(6) deposition notice, "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 639 (D.Minn., 2000) (citing *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C., 1996); *see also Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.,* 171 F.R.D. 135, 151 (S.D.N.Y., 1997) (deponent must be prepared, "to the extent matters are reasonably available, whether from documents, past employees, or other sources.") Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed. *See Prokosch,* 193 F.R.D. at 638 ("the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation that is involved in litigation, can be fully and fairly explored."). Such preparation is necessary because the, "individuals so deposed are required to testify to the knowledge of the corporation, not the individual." *Poole ex rel. Elliot v. Textron, Inc.,* 192 F.R.D. 494, 504 (D.Md., 2000); *see also Prokosch,* 194 F.R.D. at 638 (a corporation must prepare its deponents "so that they may give complete, knowledgeable and binding answers on behalf of the corporation."); *Taylor,* 166 F.R.D. at 361 ("the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions…

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl et al. v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, October 6, 2016
Page 3 of 5

The corporation must provide its interpretation of documents and events.").”  *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.,* 201 F.R.D. 33, 37 (D. Mass. 2001).

As it stands, you've designated nine (9) potential deponents covering 19 of the 22 potential topics.  Many of these deponents overlap in their proposed area of testimony.  This is wholly unreasonable and unnecessary.

Would a high-ranking Circle K executive allow as a response to his or her inquiry, a similar response?  That is, instead of one person with the answer, that the subordinate propose a series of persons to get the executive the answer to the question?

Based on your letter, it appears Kim Hoppa is the person most knowledgeable about most of the proposed topics. In fact, your overtures that we should start with Kim Hoppa and two others to "determine the scope of the remaining depositions" is, in and of itself, an indication that Circle K intends to not comply with the Rule, in forcing Plaintiff to take certain depositions just to find out who else in the company we need to depose to get the information we seek.  Nevada Courts have been very clear that it is inappropriate for 30(b)(6) designees to finger other individuals as better deponents on a given topic on which they were designated to testify.

I am particularly concerned that the company designated six (6) separate people to testify as to topics 5-14 and 18.  These designations are unquestionably contrary to the clearly stated purposes of Rule 30(b)(6), that is, "to streamline the discovery process."  The multiple designations, based on the company's different regions, are particularly inappropriate in light of the fact that there is, apparently, only one job description for a "Store Manager" for the entire company, regardless the District. *See* Circle K's Response to Plaintiff's Request for Production No 7, dated May 18, 2015.  Circle K is now attempting to strategically parade a series of mid-level HR representatives in for depositions, instead of simply designating a single national-level deponent to testify about the single job description.  Tactics such as these undermine the very purposes of Rule 30(b)(6).

Put simply, with only one national job description, there is absolutely no reason for Circle K to designate more than one person to testify as to Topics 5-14 and 18.

Next, you claim that 30(b)(6) topics dealing with affirmative defenses are a violation of the attorney-work product doctrine; however, this argument is contrary to relevant case law.

Specifically, our own Court has held that "The attorney-client privilege does not prevent the disclosure of facts communicated to an attorney, and the work product doctrine does not prevent the disclosure of facts communicated by an attorney to a client that the attorney

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl et al. v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, October 6, 2016
Page 4 of 5

obtained from independent sources." *United States EEOC v. Caesars Entm't, Inc.,* 237 F.R.D. 428, 433 (D. Nev. 2006) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *Hickman v. Taylor,* 329 U.S. 495, 508, 67 S. Ct. 385, 91 L. Ed. 451 (1947). "[W]hile objecting to the deposition questions as protected or privileged information, [the party opposing deposition questions] does not argue that contention interrogatories would be similarly inappropriate. As courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information...it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition." *Id.* at 434 (citing *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003) (citing *United States v. Boyce,* 148 F. Supp. 2d 1069, 1086 (S.D. Cal. 2001)). Thus, "defense counsel may not object to this line of questioning on the basis that it calls for the application of fact to law." *Id.* at 434-35.

You cannot assert that, on one hand, the information requested is protected by work-product privilege, while simultaneously arguing that contention interrogatories would be a more appropriate discovery vehicle. These contentions are contradictory on their face and have been roundly rejected by Courts. Within the Rules, we get to chose the manner and vehicle of the inquiry – your client, the respondent does not.

Your argument that designating someone to testify related to affirmative defenses is "too burdensome" has also been consistently rejected by courts. It is well settled that, "affirmative defenses are obviously legal in nature, but the facts which support them are not." *Id.* "Moreover, due to the affirmative duty imposed by Rule 30(b)(6) for the corporation to designate a witness to testify on matters known or reasonably available to the corporation, the defendant and its counsel control who will testify on its behalf and have the ability, indeed, the duty to properly educate the witness or witnesses who testify on its behalf." *Id.*

We are not asking that your witnesses be prepared to give complex legal analysis; rather, we are simply requesting that Circle K comply with its duty under Rule 30(b)(6) to provide witnesses who are able to testify regarding facts, and more specifically, the facts supporting Circle K's alleged affirmative defenses.

Furthermore, the idea that written discovery, either interrogatories or requests for production, is adequately responsive to Plaintiff's 30(b)(6) notice is patently incorrect. Again, our own Court has proclaimed "[W]ritten discovery is rarely, if ever, an adequate substitution for a deposition." *Bank of Am., N.A. v. Auburn & Bradford at Providence Homeowners' Ass'n,* 2016 U.S. Dist. LEXIS 104827, *6 (D. Nev. 2016) (citing *Hologram USA, INC. v. Pulse Evolution Corp.,* 2016 U.S. Dist. LEXIS 75926, 2016 WL 3353935, *2 (D. Nev. June 10, 2016) (citing *Shoen v. Shoen,* 5 F.3d 1289, 1297 (9th Cir. 1993)). "The two forms of

Anthony Martin, OGLETREE DEAKINS
Re: *Grahl et al. v. Circle K Stores, Inc.*;
U.S. District Court, District of Nevada;
Case No. 2:14-cv-305-RFB-(VCF)
Thursday, October 6, 2016
Page 5 of 5

discovery are not equivalent." *Id.* (citing *Great Am. Ins. Co. of New York v. Vegas Const. Co.,* 251 F.R.D. 534, 541 (D. Nev. 2008) (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003)).

The "Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice or subpoena request 'to elect to supply the answers in a written response to an interrogatory' in response to a Rule 30(b)(6) deposition notice." *Id.* at *6-*7 (citing *Great Am. Ins. Co. of New York,* 251 F.R.D. at 539 (quoting *Marker v. Union Fidelity Life Insurance,* 125 F.R.D. 121, 126 (M.D.N.C. 1989)). "Similarly, in responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position." *Id.* at *7 (citing *Great Am. Ins. Co. of New York,* 251 F.R.D. at 539). "This is because, due to their nature, 'depositions provide a more complete means to obtain information and are, therefore, favored." *Id.* (citing *Great Am. Ins. Co. of New York,* 251 F.R.D. at 541 (citing *Marker*, 125 F.R.D. at 126)).

Your claim that interrogatories and requests for production alone should suffice for information responsive to topics 1 and 2 is incorrect and attempts to undermine Plaintiff's right to seek discovery by the methods we choose and, which is directly contrary to the law.

In no way are we trying to make this process more difficult.  Rather, we are merely requesting that the company comply with its duties within Rule 30(b)(6) to designated an appropriate number of deponents, either with personal knowledge, or educated for the purposes of the deposition, so that plaintiff can learn the company's positions.

While I look forward to your response, we cannot continue to engage in extended "backs-and-forths" on this issue.  I appreciate your response at the earliest possible time, but please understand that absent compliance with the law as I have outlined it here, I will have no choice but to move the Court for an Order compelling Circle K's compliance with the law.

Sincerely,

LAW OFFICES OF STEVEN J. PARSONS

/s/
STEVEN J. PARSONS

SJP.ms

c:      client

# Exhibit "7"

Exhibit "7"

1  Steven J. Parsons
   Nevada Bar No. 363
2  Andrew L. Rempfer
   Nevada Bar No. 8628
3  Joseph N. Mott
   Nevada Bar No. 12455
4  LAW OFFICES OF STEVEN J. PARSONS
   10091 Park Run Dr Ste 200
5  Las Vegas NV 89145-8868
   (702) 384-9900
6  (702) 384-5900 (fax)
   Steve@SJPlawyer.com
7  Andrew@SJPlawyer.com
   Joey@SJPlawyer.com
8
   Attorneys for Plaintiff
9  CHARLES GRAHL, an individual,
   on behalf of himself and
10 all others similarly situated

11              UNITED STATES DISTRICT COURT

12                  DISTRICT OF NEVADA

13 CHARLES GRAHL; individually and on        Case No. 2:14-cv-305-RFB-(VCF)
   behalf of all other similarly situated,
14                                           PLAINTIFF CHARLES GRAHL'S
          Plaintiffs,                        *AMENDED* NOTICE OF DEPOSITIONS
15                                           (Fed. R. Civ. P., Rule 30 and 30(b)(6))
   vs.
16
   CIRCLE K STORES, INC., a foreign
17 corporation; DOES I through V, inclusive;
   and ROE Corporations I through V,
18 inclusive,

19        Defendant.
   _____/
20

21     TO:    Defendant CIRCLE K STORES, INC. ("Defendant" or "Circle K"), and its

22 attorneys, Anthony L. Martin and Jill Garcia of OGLETREE DEAKINS NASH SMOAK & STEWARD, P.C.:

23        PLEASE TAKE NOTICE that upon agreement by the parties, Plaintiff CHARLES GRAHL

24 by his attorneys, Steven J. Parsons, Andrew L. Rempfer and Joseph N. Mott of LAW OFFICES OF

25 STEVEN J. PARSONS, will take the deposition under oath of the designees of Defendant within

26 Fed. R. Civ. P. 30(b)(6), for the subjects listed below, before an officer within Fed. R. Civ. P.,

27 Rules 28 and 29 commencing at 9:00 AM, PDT, on WEDNESDAY, DECEMBER 7, 2016 at



1  LAW OFFICES OF STEVEN J. PARSONS, 10091 Park Run Dr Ste 200, Las Vegas, NV 89145-8868,

2  (702) 384-9900.  The depositions will continue from day-to-day as may be required.  The

3  depositions will be recorded by means of video, audio and stenography.

4          Dated: November 8, 2016.

5                                                    LAW OFFICES OF STEVEN J. PARSONS

6                                                    /s/ _____
                                                     STEVEN J. PARSONS
7                                                    Nevada Bar No. 363

8                                                    Attorney for Plaintiff
                                                     **CHARLES GRAHL,** an individual, on behalf of
9                                                    himself and all others similarly situated

10                          <u>CERTIFICATE OF SERVICE BY MAILING</u>

11         I hereby certify that service of the foregoing Plaintiff Charles Grahl's Amended Notice

12  of Deposition was made today by mailing a true and complete copy, postage-paid from Las

13  Vegas, NV, to the addressees shown, and via email, addressed to:

14                            Anthony L. Martin
                              Jill Garcia
15               OGLETREE DEAKINS NASH SMOAK & STEWARD, P.C.
                              3800 Howard Hughes Pkwy Ste 1500
16                            Las Vegas, NV 89169-5921
                              Anthony.martin@ogletreedeakins.com
17                            jill.garcia@ogletreedeakins.com

18  Dated: November 8, 2016.

19                                                    _____
                                                     An Employee of Law Offices of Steven J. Parsons

20

21

22

23

24

25

26

27



*10091 Park Run Drive Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
*Info@SJPlawyer.com*

1    <u>DEFINITIONS</u>

2    Unless otherwise indicated, the applicable time period for the knowledge of each

3    designee is from January 1, 2011 to the present.

4    <u>DEPOSITIONS</u>

5    Fed. R. Civ. P., Rule 30 – *Depositions by Oral Examination*, as amended 2007, provides

6    in pertinent part:

7    "(b)    Notice of the Deposition…

8    "(6)    Notice or Subpoena Directed to an Organization.  In its notice or subpoena, a

9    party may name as the deponent a public or private corporation, a partnership, an association,

10    a governmental agency, or other entity and must describe with reasonable particularity the

11    matters for examination.  The named organization must then designate one or more officers,

12    directors, or managing agents, or designate other persons who consent to testify on its behalf;

13    and it may set out the matters on which each person designated will testify.  A subpoena must

14    advise a nonparty organization of its duty to make this designation.  The persons designated

15    must testify about information known or reasonably available to the organization."

16    <u>DEPONENTS</u>

17    1.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

18    **KNOWLEDGEABLE** of the factual basis for each admission, denial and affirmative defense in

19    Circle K's Answer to Plaintiff's Complaint;

20    2.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

21    **KNOWLEDGEABLE** of Circle K's responses to Plaintiff's Requests for Production served on

22    February 9, 2015;

23    3.    **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

24    **KNOWLEDGEABLE** of Defendant's policies, practices, and procedures for the keeping of

25    employee personnel records, including job descriptions; records relating to job offers,

26    promotion, demotion, transfer, or layoff; rates of pay and other forms of compensation; pay

27    and compensation information; records relating to other employment practices (including



1   policy acknowledgments and agreements); letters of recognition, warnings, counseling, and

2   disciplinary notices; performance evaluations and goal setting records; and termination

3   records;

4       4.      THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS

5   KNOWLEDGEABLE of the organizational structure of Defendant's business (i.e. the chain of

6   command or organizational hierarchy) from the executive level to the store clerk level;

7       5.      THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS

8   KNOWLEDGEABLE of the job descriptions for various positions in Defendant's organization,

9   including, Store Manager, Assistant Store Manager, and Market Manager, and the job duties,

10  tasks, and responsibilities related to those positions;

11      6.      THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS

12  KNOWLEDGEABLE of the actual day-to-day duties, responsibilities, and obligations of Store

13  Managers, Assistant Store Managers, and Market Managers and how those duties,

14  responsibilities, and obligations differ from the job descriptions for each job;

15      7.      THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS

16  KNOWLEDGEABLE of Defendants policies, practices, and procedures for the staffing of

17  individual stores, including the number of employees at each store, the scheduling of store

18  employee shifts, the management of store employee schedules, discipline of store employees,

19  and hiring and termination of store employees;

20      8.      THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS

21  KNOWLEDGEABLE of differences in day-to-day duties, obligations, and responsibilities of store

22  employees, including store managers, assistant managers and clerks;

23      9.      THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS

24  KNOWLEDGEABLE of differences in duties, obligations, and responsibilities of store employees,

25  including store managers, assistant managers and clerks as those duties, obligations, and

26  responsibilities vary from store location to location, state to state, and region to region;

27      10.     THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS



1   **KNOWLEDGEABLE** of Defendant's timekeeping system or systems, including the physical

2   mechanism(s) by which employees clock-in and clock-out; information regarding software or

3   programs used to input, track, or monitor employee hours; information related to any

4   subcontractor(s) or company(ies) contracted to provide timekeeping services or equipment to

5   Defendant;

6       11.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

7   **KNOWLEDGEABLE** of Defendant's policies, practices, and procedures for the retention and

8   storage of historical employee time records and work schedules;

9       12.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

10  **KNOWLEDGEABLE** of which employees were required to clock-in and clock-out using

11  Defendant's timekeeping system (i.e. what types or classes of employees or which job

12  descriptions) and those employees job titles, duties, and responsibilities;

13      13.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

14  **KNOWLEDGEABLE** of the time-editing feature(s) of Defendant's timekeeping system, including

15  who has access to the time-editing feature (name, job title, job description, and authority to

16  access the feature);

17      14.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

18  **KNOWLEDGEABLE** of Defendant's compliance with applicable state and federal wage and hour

19  laws as they relate to Defendant's timekeeping policies, practices, procedures, and systems;

20      15.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

21  **KNOWLEDGEABLE** of Defendant's decision to implement or to not implement a timekeeping

22  system or systems, including the physical mechanism(s) by which employees clock-in and

23  clock-out; information regarding software or programs used to input, track, or monitor

24  employee hours; information related to any subcontractor(s) or company(ies) contracted to

25  provide timekeeping services or equipment to Defendant;

26      16.   **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

27  **KNOWLEDGEABLE** of Defendant's compliance with applicable state and federal wage and hour



1  laws as they relate to the classification of employees and the payment or non-payment of

2  overtime wages;

3       17.  **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

4  **KNOWLEDGEABLE** of facts that support Defendant's claim that store managers are exempt

5  from the overtime provisions of the Fair Labor Standards Act ("FLSA");

6       18.  **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

7  **KNOWLEDGEABLE** of the reclassification of store managers as non-exempt from the overtime

8  provisions of the FLSA after the filing of Plaintiff's complaint in this case;

9       19.  **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

10 **KNOWLEDGEABLE** of the July 31, 2014 Memorandum regarding "Change in Employment

11 Status from Exempt Store Manager (Salaried) to Non-exempt Store Manager (Hourly)" and the

12 analysis related to this memorandum and the bases used to justify the change in employment

13 status. A copy of the Memorandum is attached hereto and incorporated herein as if set forth

14 fully, here, as Exhibit "1";

15      20.  **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

16 **KNOWLEDGEABLE** of the August 28, 2014 Memorandum regarding "Change in Employment

17 Status from Exempt Store Manager (Salaried) to Non-exempt Store Manager (Hourly)" and the

18 analysis related to this memorandum and the bases used to justify the change in employment

19 status.  A copy of the Memorandum is attached hereto and incorporated herein as if set forth

20 fully, here, as Exhibit "2";

21      21.  **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

22 **KNOWLEDGEABLE** of Defendant's video surveillance system(s), specifically, regarding the

23 ability of that system or those systems to capture the act of employees beginning and or

24 ending their daily work, and Defendant's records retention policies for surveillance footage;

25      22.  **THE PERSON OR PERSONS DESIGNATED BY DEFENDANT CIRCLE K AS**

26 **KNOWLEDGEABLE** of Defendant's records maintenance and retention policies related to data

27 containing Store Managers' employment and identification information, including, but not



*10091 Park Run Drive Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
Info@SJPlawyer.com

1   limited to, Store managers' names, addresses, telephone numbers, email addresses, social

2   security numbers, job titles, pay rates, days works, hours worked, and earnings; and

3       23.   Kim Hoppa.[1]

4   Dated: November 8, 2016.

5                                   LAW OFFICES OF STEVEN J. PARSONS

6                                   /s/ _____
                                    STEVEN J. PARSONS
7                                   Nevada Bar No. 363

8                                   Attorneys for Plaintiff
                                    **CHARLES GRAHL**, an individual, on behalf of
9                                   himself and all others similarly situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23   _____

24       [1]Ms. Hoppa is listed as a deponent upon her designation by Defendant Circle K that she
     is to be the initial designated witness for "...Topics 4-9 and 16-20; portions of 10-13 and 15
25   (understanding that she will attest to issues related to the Arizona Division, with additional
     witnesses to be designated accordingly for these specific topics)."  Letter from Defendant
26   Circle K Stores, Inc. Counsel, Anthony S. Martin, to Steven J. Parsons, dated October 13,
27   2016.



# Exhibit "8"

Exhibit "8"

**Deposition of:**

Kimberly Carmen Hoppa

Volume I, Pages 1 - 228

**Case:**

Charles Grahl v. Circle K Stores, Inc.
2:14-CV-305-RFB-(VCF)

**Date:**

12/07/2016



OASIS
REPORTING SERVICES

400 South Seventh Street • Suite 400, Box 7 • Las Vegas, NV  89101
702-476-4500 | www.oasisreporting.com | info@oasisreporting.com

COURT REPORTING | NATIONAL SCHEDULING | VIDEOCONFERENCING | VIDEOGRAPHY

Kimberly Carmen Hoppa, Volume I                    Charles Grahl v. Circle K Stores, Inc.

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3    CHARLES GRAHL;                )
     individually and on behalf    )
4    of all other similarly        )
     situated,                     )
5                                  )
                    Plaintiffs,    )
6                                  )
             vs.                   )   Case No.
7                                  )   2:14-cv-305-RFB-(VCF)
     CIRCLE K STORES, INC., a      )
8    foreign corporation; DOES I   )
     through V, inclusive; and     )
9    ROE Corporations I through    )
     V, inclusive,                 )
10                                 )
                    Defendants.    )
11   _____)

12

13   VIDEOTAPED DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE

14                   OF CIRCLE K STORES, INC.

15              (Pursuant to FRCP 30(b)(6))

16                  KIMBERLY CARMEN HOPPA

17               Volume I, Pages 1 - 228

18           Taken on Wednesday, December 7, 2016

19      By a Certified Court Reporter and Legal Videographer

20                     At 9:05 a.m.

21           At 10091 Park Run Drive, Suite 200

22                   Las Vegas, Nevada

23

24   REPORTED BY:  KEVIN WM. DANIEL, FAPR, RDR, CRR, CCR 711

25   Job No. 19468

```
 1    APPEARANCES:

 2    For Plaintiff Charles Grahl, an individual, on behalf
      of himself and all others similarly situated:
 3
             LAW OFFICES OF STEVEN J. PARSONS
 4           BY:  STEVEN J. PARSONS, ESQ.
             BY:  JOSEPH N. MOTT, ESQ.
 5           BY:  ANDREW L. REMPFER, ESQ.
             BY:  SCOTT E. LUNDY, ESQ.
 6           10091 Park Run Drive
             Suite 200
 7           Las Vegas, NV 89145-8868

 8

 9    For Defendant Circle K Stores, Inc.:

10           OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
             BY:  ANTHONY L. MARTIN, ESQ.
11           BY:  DANA B. SALMONSON, ESQ.
             3800 Howard Hughes Parkway
12           Suite 1500
             Las Vegas, NV 89169
13

14           CIRCLE K STORES, INC.
             BY:  DORYCE NORWOOD, ESQ.
15           1130 West Warner Road, DC04
             Tempe, AZ 85284
16

17    Also Present:  Joseph Camp, Videographer

18

19

20

21

22

23

24

25
```

```
 1

 2                      I N D E X

 3
     WITNESS:  KIMBERLY CARMEN HOPPA
 4
                                                    PAGE
 5
     Examination By Mr. Parsons                        6
 6

 7                   INDEX TO EXHIBITS

 8
     Exhibit                                         Page
 9
          1          Plaintiff Charles Grahl's        59
10                   Amended Notice of Depositions

11        2          Letter dated May 4, 2015 to      89
                     Ogletree Deakins, et. al.,
12                   from Andrew L. Rempfer

13        3          Letter dated July 21, 2016 to    89
                     Anthony Martin from Steven J.
14                   Parsons

15        4          Letter dated August 1, 2016 to   89
                     Anthony Martin from Steven J.
16                   Parsons

17        5          Letter dated August 5, 2016 to   89
                     Steven J. Parsons from Anthony
18                   Martin

19        6          Letter dated September 20,       89
                     2016 to Steven J. Parsons from
20                   Tony Martin

21        7          Letter dated October 6, 2016     89
                     to Anthony Martin from Steven
22                   J. Parsons

23        8          Letter dated October 12, 2016    89
                     to Anthony Martin from Steven
24                   J. Parsons

25
```

1      A.    Correct.

2      Q.    Okay.  I'm not sure this is easily understood,

3  so I'll do it very carefully.

4            I've taken numbers of these designated witness

5  depositions, and the biggest struggle is learning from

6  the witness how they came to be designated.  I'd ask

7  you to reflect a moment before you answer.

8            When the choice to choose the designees came

9  to you, were you told that you're going to testify, or

10  did you conclude and exercise the prerogative of

11  saying, "I'm the proper witness to testify to this"?

12      A.    No.  I went through and said, "I, I can do

13  this.  I'm not the person to do this.  I'm the person

14  to do this.  I know this.  I don't know this."

15      Q.    Okay.  So as we go through the lists, it would

16  be your testimony that all of the choices, whether they

17  were affirmed by Doryce or Tony's office, whatever, you

18  were the initiator of the appropriateness of you being

19  the designated witness?

20      A.    Yes.

21      Q.    Okay.  Now, when was the last time, other than

22  briefly looking at the notice now, that you last looked

23  at the designations we've given you?

24      A.    For my -- for what I'm going to --

25      Q.    That whole list, in other words --

```
 1        A.    Not that I'm aware of.

 2        Q.    So you simply made the choices, and nobody

 3   else reviewed it?

 4        A.    I'm sure there's other people that reviewed

 5   it, or they may have.  I don't know.  I wasn't part of

 6   every single -- I only know when I sat down with Tony

 7   and talked about it, and general counsel.

 8        Q.    I don't want you to specifically relate what

 9   you told to Tony, but what I do need to know, when you

10   say you're not familiar with what else happened, did

11   you discuss it with anybody other than the lawyers?

12        A.    I did not.  No.

13        Q.    So you made the selections, you told the

14   lawyers, and that's the first and last of it as you

15   understood it?

16        A.    Yes.

17        Q.    Okay.  Do you have any knowledge from any

18   source, either by way of documents or conversations,

19   that either Ms. Brown, Ms. Prince, or Mr. Rodriguez

20   know about your designation of these subjects?

21        A.    I did not sit down with -- I know that Ginger

22   and Linda do know what I'm -- about these, yes.  Paul.

23        Q.    Well, let's see if we can include or exclude

24   him entirely.

25              Is Mr. Rodriguez familiar you're here today to
```

1        A.    In reading this, that's what I read, that you

2    do not feel that there should be six different people

3    testifying on these subjects.

4        Q.    Okay.  Let's stop right there.  I cannot ask

5    you about what you've discussed with your lawyers, but

6    as the designated witness, did anybody make you aware

7    that at least it was our contention that you must

8    educate yourself as to these topics to be fully

9    prepared, not simply limited to what you knew before

10   you were designated as a witness?

11       A.    Yes.

12       Q.    Okay.  So you understood that part of the

13   burden of the rule is that if you're going to testify

14   on a subject, there's really no limitation on what you

15   must do to prepare to be the designated witness.

16       A.    What I understood is, based on my knowledge

17   and the topics that we have discussed that I would

18   review, that that's where I needed to know everything

19   about those specific subjects, not the whole document.

20       Q.    That may be a misstatement.  Let me make sure

21   I'm communicating with you clearly.

22       A.    Okay.

23       Q.    Let's try to quantify and say that before this

24   case came to this notice, you knew X amount of

25   information.  Let's just say we'll rate that was

 1     Q.    No.

 2     A.    Okay.

 3     Q.    The only thing that's in smaller print is my

 4  name and address.

 5     A.    Okay.  I did read that, yes.

 6     Q.    Had you read it before?

 7     A.    Yes.

 8     Q.    So you knew, at least to that extent, what you

 9  were stepping into?

10     A.    Yes.

11     Q.    Okay.  Here's some key questions I want you to

12  be very careful with.

13          Did anybody tell you that you had an

14  obligation to learn about the information to be

15  responsive to these subjects?

16     A.    No.

17     Q.    Did anybody tell you that the company had an

18  obligation to prepare witnesses to testify to these

19  subjects?

20     A.    Did anybody tell me if --

21     Q.    The company has the obligation to prepare

22  witnesses?

23     A.    No.

24     Q.    Okay.  So you would tell me you were totally

25  unaware of what was required of you as the witness in

 1   being designated, and what was required of you in being

 2   educated to these subjects before you gave testimony?

 3        A.   Well, in your wording, I guess, I mean, they

 4   told me I was, I needed to be here to speak about these

 5   subjects, or they would like me to be here, you know.

 6   I chose to do this.  And that, I mean, that I was going

 7   to have to be here to tell the truth based on what I

 8   know.

 9        Q.   But that was it?

10        A.   Yeah.

11             MR. PARSONS:  Okay.  Let's take a break.

12             THE VIDEOGRAPHER:  Time is approximately 10:38

13   a.m.  We are going off the record.

14                      (Recess.)

15             THE VIDEOGRAPHER:  The time is approximately

16   11:00 a.m.  We are back on the record.

17             MR. PARSONS:  Thank you.  We're going to bring

18   in a series of letters, but right now let's go out of

19   order.

20             I'd like you to look at Plaintiff's 1, and

21   Tony, you need to understand, I'm not asserting on each

22   individual one I even know which one she's designated

23   or not, so I'm just going to go through them and ask,

24   "Are these your topics or not?"

25             THE WITNESS:  I'd like to start off by saying

 1    Q.   Well, remember, what we're talking about is

 2  what you did to prepare for this deposition.

 3           Let's see if I can draw a contrast between the

 4  two extremes.  "Gee, Miss Jones, I'm going to

 5  Las Vegas.  You used to live there.  Where should I

 6  have dinner?"  I don't think that's preparing for this

 7  deposition.

 8           But if instead it was, "Hey Miss Jones,

 9  they've asked me to testify about subjects X, Y and Z.

10  Can you refresh me about practices X?  Can you tell me

11  what the limitations of Y?  Do I perceive Z correctly?"

12  That would be something I had want to learn of, so I

13  know what your source of information was.  Does that

14  contrast help you?

15    A.   Yes.

16    Q.   Okay.  Now, again, we know it's Ms. Meza --

17    A.   Um-hum.

18    Q.   -- with the lead pipe, in the drawing room.

19  That's an allusion to the game "Clue."  You had to

20  specify where the murder took place and with which

21  weapon.

22           When did you speak to Ms. Meza, and what was

23  the subject?

24    A.   I don't recall.  It was regarding time and

25  attendance.

Exhibit "9"

Exhibit "9"

**Deposition of:**

Kimberly Carmen Hoppa

Volume II, Pages 229 - 320

**Case:**

Charles Grahl v. Circle K Stores, Inc.
2:14-CV-305-RFB-(VCF)

**Date:**

01/19/2017



400 South Seventh Street • Suite 400, Box 7 • Las Vegas, NV  89101
702-476-4500 | www.oasisreporting.com | info@oasisreporting.com

COURT REPORTING | NATIONAL SCHEDULING | VIDEOCONFERENCING | VIDEOGRAPHY

1                UNITED STATES DISTRICT COURT

2                    DISTRICT OF NEVADA

3    CHARLES GRAHL;                )
     individually and on behalf    )
4    of all other similarly        )
     situated,                     )
5                                  )
                    Plaintiffs,    )
6                                  )
           vs.                     )   Case No.
7                                  )   2:14-cv-305-RFB-(VCF)
     CIRCLE K STORES, INC., a      )
8    foreign corporation; DOES I   )
     through V, inclusive; and     )
9    ROE Corporations I through    )
     V, inclusive,                 )
10                                 )
                    Defendants.    )
11   _____)

12

13   VIDEOTAPED DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE

14                 OF CIRCLE K STORES, INC.

15                (Pursuant to FRCP 30(b)(6))

16                 KIMBERLY CARMEN HOPPA

17                Volume II, Pages 229 - 320

18             Taken on Thursday, January 19, 2017

19    By a Certified Court Reporter and Legal Videographer

20                     At 9:07 a.m.

21            At 10091 Park Run Drive, Suite 200

22                    Las Vegas, Nevada

23

24   REPORTED BY:  KEVIN WM. DANIEL, FAPR, RDR, CRR, CCR 711

25   Job No. 19793

```
 1    APPEARANCES:

 2    For Plaintiff Charles Grahl, an individual, on behalf
      of himself and all others similarly situated:
 3
            LAW OFFICES OF STEVEN J. PARSONS
 4          BY:  STEVEN J. PARSONS, ESQ.
            BY:  JOSEPH N. MOTT, ESQ.
 5          BY:  ANDREW L. REMPFER, ESQ.
            BY:  SCOTT E. LUNDY, ESQ.
 6          10091 Park Run Drive
            Suite 200
 7          Las Vegas, NV 89145-8868

 8

 9    For Defendant Circle K Stores, Inc.:

10          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
            BY:  ANTHONY L. MARTIN, ESQ.
11          BY:  DANA B. SALMONSON, ESQ.
            3800 Howard Hughes Parkway
12          Suite 1500
            Las Vegas, NV 89169
13

14          CIRCLE K STORES, INC.
            BY:  DORYCE NORWOOD, ESQ.
15          1130 West Warner Road, DC04
            Tempe, AZ 85284
16

17

18    Also Present:  Joseph Camp, Videographer
                      Tim Knolls
19

20

21

22

23

24

25
```

```
 1

 2                        I N D E X

 3

     WITNESS:   KIMBERLY CARMEN HOPPA
 4
                                                      PAGE
 5
     Examination By Mr. Parsons (Resumed)             234
 6

 7                     INDEX TO EXHIBITS

 8

     Exhibit                                          Page
 9
         12        Spreadsheet titled "Grahl v.       242
10                 Circle K, Circle K 30(b)(6)
                   Designees"
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   deposition.

2        Do you understand the premises of my question?

3   What contact you've had with these folks, once you

4   realized you've become the designated witness, and

5   whether you've contacted any of these people?

6        A.   Okay.

7        Q.   Okay?  Linda Prince?  Have you had any contact

8   with her regarding your deposition testimony?

9        A.   We had met with Linda and Ginger prior to the

10  last deposition.

11       Q.   Okay.  And was it that time one of the bases

12  of your conversation, your preparation for the

13  deposition, both last time and today?

14       A.   Yes.

15       Q.   Did you discuss with Ms. Prince payroll issues

16  regarding your designation in the 30(b)(6) notice?

17       A.   We discussed, yes, the process and the

18  questions that were going to be asked and the things

19  that I didn't feel comfortable testifying to.

20       Q.   Okay.  Let's stop right there.  When you say

21  you didn't feel comfortable, tell me why it is that you

22  concluded you didn't feel comfortable on a given

23  subject?

24       A.   Again, some of the background, the keeping of

25  records, the IT part of it, the systems part of it.

1    I'm not a part of putting it together.  I'm a part of

2    the implementation of it and the training of it.

3        Q.   Did someone tell you that was the prerequisite

4    for being a designated witness on the designations we'd

5    asked for?

6        A.   No.

7        Q.   So you simply imposed your own sense that

8    because you didn't understand the background of

9    something, you didn't feel comfortable testifying as to

10   something?

11       A.   Correct.  I didn't feel I was the most

12   knowledgeable, or would be the most knowledgeable to

13   testify to that.

14       Q.   Did anybody discuss with you the requirement

15   that somebody be the most knowledgeable?

16       A.   We discussed things that --

17            MR. MARTIN:  Objection to the extent it calls

18   for any type of attorney/client privileged

19   communication.

20   BY MR. PARSONS:

21       Q.   Well, and this is going to be difficult, but

22   quite literally the directions to you may not be

23   subject to attorney/client privilege because it's part

24   of the process of preparing you for today.

25            So let's at least start with, did anybody tell

1    be an appropriate witness?

2        A.   Yes.  I -- again, because I'm not even

3    knowledgeable about the back end piece of it.

4        Q.   Well, let's talk about that.  Was it such that

5    you couldn't be educated about the knowledge that was

6    being asked of in these questions?

7        A.   I would not feel comfortable with that.

8    Again, I have had conversations with Ginger Brown

9    before regarding the IT side, and it goes over my head.

10   I don't understand what she's talking about.

11       Q.   Okay.  Let's take a look at that then in the

12   context of today.

13       A.   Okay.

14       Q.   We understand that Ms. Brown is being

15   designated, at least as a partial witness, as to

16   subjects 3, 10, and 14.  Is that your understanding as

17   well?  You can go ahead and look at both the matrix and

18   the notice.

19       A.   Okay.

20            MR. MARTIN:  Just for the record, the capture

21   that I've indicated, Exhibit 5, provides clarification

22   on the partiality of the designations.

23            MR. PARSONS:  Since I sent them all looking,

24   Kevin, did you retain the original exhibits from the

25   first session?

1      Q.    And it was a mistake, wasn't it?

2      A.    That was my mistake to assume that, yes.

3      Q.    There's nothing in the notice anywhere that

4   requires the witness be limited to the person most

5   knowledgeable?

6      A.    Not that I can see, no.

7      Q.    Do you recall discussing with anybody that you

8   believe that the limitation was that the company must

9   provide the most knowledgeable witness, therefore, you

10  wouldn't be suitable on certain of these topics?

11     A.    I don't recall that, no.

12     Q.    So simply a mistake on your part upon which

13  you've operated?

14     A.    Correct, the way I looked at it or the way I

15  thought I said that it was most knowledgeable.

16     Q.    Do you have any reason to tell me today why

17  you've read that into it, when now on review you

18  realize there's nothing in there about most

19  knowledgeable?

20     A.    No.

21     Q.    Just something that you spontaneously created

22  as a limitation on your part?

23     A.    Yes.  I didn't feel comfortable discussing

24  those.

25     Q.    Let's talk about that briefly.  That's the

1   multiple reference you say you didn't feel comfortable.

2   Did either you or the company tell you that one of your

3   self-imposed limitations could be your level of

4   comfortability to testify to these things?

5       A.   No.

6       Q.   Did you express to others that you believed

7   you weren't comfortable testifying to some of these

8   designations?

9       A.   "Others"?

10      Q.   Yes.  Did you express --

11      A.   What do you mean by "others"?

12      Q.   Anybody.  Did you express to anybody saying,

13  "You know, I'm not comfortable testifying as to that

14  subject"?

15      A.   I believe I was -- I don't believe I'm the

16  one, the most knowledgeable to testify to that.

17      Q.   Okay.  We've gotten hung up again on another

18  of your assumptions that I thought we agreed was a

19  mistake.

20      A.   Okay.

21      Q.   Okay?  When you said you determined you

22  weren't the most knowledgeable, first of all the

23  question was, did you describe or express to anybody

24  that you had the lack of comfortability being the

25  designated witness, on any of these designations?  Did

1   you ever express, "I'm not comfortable being that

2   designated witness"?

3        A.   I don't recall whether I said that exactly.

4        Q.   Now, recognizing that you've yet again, right

5   now, imposed the term of "most knowledgeable," which

6   isn't a requirement, how did you come to believe that

7   you weren't comfortable becoming the designated

8   witness?  What was the basis of your determination?

9        A.   Well, in many cases, these are for Circle K.

10  I'm going to go back to, I support the Arizona

11  division.  So, in that case, it's not as easy to learn

12  all of that when there are different divisions and

13  understand exactly what it is that they do, what their

14  laws are.  I am not a part of that, and I don't seek

15  that knowledge.

16       Q.   Okay.  Let's contrast that, though.  Did

17  anybody describe to you that under the rule, whether

18  you were comfortable or not, or whether it was

19  burdensome or not to learn that, that a designated

20  witness, in fact, must make an effort to learn the

21  subjects of the designation?

22       A.   I know what my designations are, and, yes,

23  that was part of it that I would go out, and the things

24  that I was not knowledgeable on, that I would learn

25  those.  And those are --

1    Q.   So how did you discern within your mind then

2    that which you were amenable to learning, versus that

3    that you thought was too difficult and made you

4    uncomfortable?

5    A.   Again, in my thoughts, it was the scope, the

6    scope of what it was.  So, again, there are many things

7    that, as a base, we may all do that we may start as a

8    base of something, like a job description or something

9    like that.  We start off, those are some basic things

10   that we do.  However, when you start getting into

11   details, those aren't my details to know or use in my

12   business unit.

13   Q.   Where did you become knowledgeable that that

14   was a basis to resist not testifying on designated

15   subjects?  You understand that whether or not you deal

16   with information on the company on a given basis, or

17   even regularly, is not itself the basis to resist being

18   designated as a witness?

19        MR. MARTIN:  Objection.  Calls for legal

20   conclusion.

21        MR. PARSONS:  No, it doesn't.  It calls for

22   her understanding of what she was told to do to prepare

23   for this deposition.

24   BY MR. PARSONS:

25   Q.   Ms. Hoppa, I want you to make sure, we've now

 1  education on Designation 3; right?

 2      A.   I could have.  I did not do that.

 3      Q.   It was that simple?

 4      A.   I don't believe it to be that simple.  That's

 5  your --

 6      Q.   The statement I made is not the way you open

 7  the subject with Linda?  I'm not asking what education

 8  would have been required.  That may have been

 9  extensive.  It may have taken you hours or days.

10  That's not my question, ma'am.

11           My question was, there was nothing inhibiting

12  you, other than your own self-imposed limitation,

13  "Linda, I need your help.  Educate me."  It was that

14  simple, wasn't it?

15      A.   Yes.  It could have been that simple.

16           MR. PARSONS:  Okay.  Let's take a break.

17           THE VIDEOGRAPHER:  The time is approximately

18  10:49 a.m.  We are going off the record.

19       (Recess taken from 10:49 a.m. to 11:00 a.m.)

20           THE VIDEOGRAPHER:  The time is approximately

21  11:00 a.m.  We are back on the record.

22  BY MR. PARSONS:

23      Q.   Ms. Hoppa, moving forward through the list of

24  names on the left-hand axis of Exhibit 12, did you

25  attempt to learn from Ginger Brown those aspects of

1   to make the entree to Ginger?  It was as simple as

2   saying, "Ginger, we've been asked to designate a

3   witness.  I know some of this.  I need your help to be

4   educated"?

5        A.   I agree that you, asking that question, would

6   seem that simple.

7        Q.   Okay.  Let's stop right there.  We also agree,

8   do we not, that you never asked that question?

9        A.   Correct.  I did not ask that question.

10       Q.   You took it upon yourself to determine that it

11  was too technical, too difficult, and it would take too

12  much time?

13       A.   Correct.

14       Q.   Okay.  Now, by contrast, don't I recall that

15  you told me you had spent days in preparing with

16  Mr. Martin for this deposition?

17       A.   Correct.

18       Q.   Something in excess of a week?

19       A.   Correct.

20       Q.   So we know that you afforded yourself time to

21  work with the attorneys to prepare for the deposition;

22  correct?

23       A.   For what I was assigned for, yes, or for what

24  I agreed to testify to.

25       Q.   I guess I'm lost again when say "assigned to."

1   Did somebody come to you and say, "We want you to be

2   limited and not testify as to No. 3"?

3       A.   No.  I misspoke.  That's what I agreed that I

4   would -- what I agreed to, like we've been talking

5   about, that I was comfortable in testifying to.

6       Q.   Well, we know that you're comfortable as to

7   testifying to No. 3 as to Arizona's practices, because

8   you've admitted that today; right?

9            MR. MARTIN:  Objection, misstates testimony.

10  BY MR. PARSONS:

11      Q.   No.  I'm concluding for her.  You've agreed

12  that Designation No. 3 as to Arizona, you have some

13  knowledge, don't you?

14      A.   I have some knowledge.

15      Q.   So we know that, as to Designation No. 3, you

16  are an appropriate witness as to those subjects I've

17  asked about; right?

18           MR. MARTIN:  Objection, argumentative.

19           THE WITNESS:  Again, I was not comfortable

20  testifying to No. 3.

21  BY MR. PARSONS:

22      Q.   Ma'am, please tell me so I'll understand,

23  where is it you've become knowledgeable that your level

24  of comfortability determines whether or not you're

25  knowledgeable?

1    currently.

2        Q.    And that's because he was replaced by the HRD

3    for the division?

4        A.    He wasn't replaced.  I believe there was -- he

5    was the HR manager, and because they didn't have an HR

6    director, he, he was on the call, I'm assuming to at

7    least hear what the call was about.

8        Q.    You might listen my question before answering.

9    I said was he replaced on the calls by the HRD?

10       A.    Was he replaced?  Yes.  He took the call

11   instead of an HRD, because there wasn't an HRD for that

12   area.

13       Q.    Now, recalling how much difficulty you had in

14   ultimately agreeing, we did agree, I believe, that the

15   entree to being educated about other divisions, or in

16   the prior questions about the IT and payroll, was the

17   simple premise of saying to anybody that could educate

18   you, "I need your help"?  You agree with that; right?

19       A.    I agree that's how you feel about it.  The way

20   I feel about it is it's much more than that.  It's much

21   more than asking that question.

22       Q.    You have an open end right now.  Tell me about

23   how you would approach somebody, either Ms. Brown,

24   Ms. Prince, or any of these others about, "I need to

25   get educated, I need to provide an entree to you for

 1    the discussion."  Tell me what you'd do.

 2        A.   I wouldn't do that, because I know there's a

 3    lot more to it than I am -- probably that I'm capable

 4    of learning and discussing.

 5        Q.   So without knowing, and without making an

 6    inquiry, you've determined that it's an impossible task

 7    to become educated, because it's too difficult for you?

 8        A.   I've determined that it's more than I feel

 9    that I'd be able to do, yes.

10        Q.   Okay.  Did you counsel with anybody about that

11    decision?

12        A.   No.

13             MR. MARTIN:  Objection, vague.

14    BY MR. PARSONS:

15        Q.   I mean, literally anybody?  When you learned

16    that you're going to be a designated witness, did you

17    tell anybody, "Please don't designate me on certain

18    subjects because I believe it's far more difficult than

19    I'm capable of doing"?

20        A.   From what I recall, it was a discussion with

21    general counsel on the knowledge base of that, and how

22    I was not comfortable with going into the specifics

23    that were needed for those areas.

24        Q.   But you initiated that comment.  It wasn't

25    imposed on you?

```
 1        A.   I don't recall it being imposed on me.

 2        Q.   So you simply said, "I'm not comfortable being

 3   a witness about these subjects"?

 4        A.   From what I recall.

 5        Q.   Okay.  Now, we do agree, however, that either

 6   at that juncture, or before or since, you never made

 7   the attempt to educate yourself?

 8        A.   I never asked the question as you stated it.

 9        Q.   "I need help"?

10        A.   I never said that.  No.

11        Q.   It's a pretty simple statement; right?  We

12   agree that just saying "I need help," is that

13   profoundly simple?

14        A.   In your -- again, that's how you feel about it

15   being simple, asking for help.  However, I know with

16   what I've learned about just Arizona and every state

17   being different, that it was going to be more than just

18   asking that question.  Everybody has different ways of

19   doing things within each division.

20        Q.   But you made no effort to learn how those

21   differences --

22        A.   No.

23        Q.   -- are?

24        A.   No, I did not.

25        Q.   Okay.  So you imposed upon yourself basically
```

1    an inhibition to even asking for help; right?

2        A.    I did not ask for help.

3        Q.    And you were inhibited from asking for help,

4    because you feared it was too broad and too deep and

5    you weren't comfortable learning?

6        A.    It wasn't a fear, as much as I wasn't willing

7    to do that.  I felt it was too much, because I do have

8    my job that I still have to do every day, in addition

9    to spending all the time I've spent to get ready for

10   this deposition in what I'm answering now.

11       Q.    Did you explain to anybody that it was too

12   much for you to do?

13       A.    We didn't get that far.

14       Q.    Did you explain to anybody or ask -- let me

15   pose it as a question.  Did you ask anybody if there

16   was a limit of the amount of commitment you were to

17   make to prepare as a designated witness?

18       A.    I don't recall us having that discussion.

19       Q.    So that was never your understanding.  You

20   just simply unilaterally determined it was too much?

21       A.    For what I believed to be the scope, yes.

22       Q.    And you didn't communicate that to anybody.

23   You simply said, "I'm not comfortable"?

24       A.    I said, "I'm not comfortable testifying to

25   those."

Exhibit "10"

Exhibit "10"

1       <u>DECLARATION OF JOSEPH N. MOTT IN SUPPORT OF</u>
    <u>PLAINTIFF'S MOTION TO COMPEL DEFENDANT CIRCLE K STORES, INC.'S COMPLIANCE</u>
2                <u>WITH FED. R. CIV. P. 30(b)(6)</u>

3       I, JOSEPH N. MOTT, under penalty of perjury, declare as follows:

4       1.      I am an attorney duly licensed to practice law in the State of Nevada and in such

5 capacity represent the Plaintiff herein.

6       2.      On February 3, 2017, counsel for both parties conducted a meet and confer

7 conference at LAW OFFICES OF STEVEN J. PARSONS.

8       3.      Also present were: (1) Andrew L. Rempfer of LAW OFFICES OF STEVEN J. PARSONS,

9 for Plaintiff; (2) Anthony L. Martin of OGLETREE DEAKINS, for Defendant; and (3) Dana B.

10 Salmonson of OGLETREE DEAKINS, for Defendant.

11       4.      The meet and confer conference conformed with the requirements of Local

12 Rules LR 26-7 and LR IA 1-3(f).

13       5.      The parties were unable to come to an agreement regarding the number of

14 Circle K's 30(b)(6) designees or the requisite level of preparation for each individual designee.

15       I, Joseph N. Mott, hereby swear under penalty of perjury that the assertions of this

16 Declaration are true.

17       Dated: June 7, 2017.

18                            /s/ Joseph N. Mott
                           JOSEPH N. MOTT

19

20

21

22

23

24

25

26

27



Exhibit "11"

Exhibit "11"

## Position: **Store Manager**
The Store Manager is an exempt salaried employee reporting to the Market Manager

It is Circle K's intention to provide enough information to all applicants and employees regarding the actual job duties (both mental and physical) of each position so individuals can decide if they are qualified to adequately perform such tasks. Due to the vast number of duties that may be assigned to each position, the following list is the Company's attempt to summarize the kinds of tasks It considers "essential" for those holding this position.

### MINIMUM REQUIREMENTS
- Experience in retail sales preferred
- Legally eligible to work in the United States
- Reliable transportation to and from the store
- Ability to communicate (orally and in writing) in English
- Supervise, train and perform all duties and use of equipment of the CSR, Lead CSR, and Store Assistant positions
- Circle K stores operate 24/7. For that reason, its store managers may be required to work non-traditional shifts and /or schedules based upon business needs. Work schedules may vary as to the days of the week and /or hours of the day.

### SUPERVISION
- Recruit, interview, select, retain and train positive, enthusiastic employees, ensuring excellent customer service
- Develop, manage and assign tasks appropriately to ensure the store is clean, adequately stocked, organized and well-maintained based on established Company standards
- Schedule periodic on-going communication meetings with all store employees and the Market Manager regarding safety, employment issues, policies, enhanced sales, etc.
- Schedule employees within Company guidelines to maximize customer service, sales and maintain store image
- Prepare on-going and timely performance appraisals in writing for all employees, providing proper performance based feedback
- Develop and coach employees to encourage promotional opportunities
- Ensure a safe workplace, train and ensure compliance on safety procedures and promote safety awareness
- Monitor workplace environment to assure legal and/or regulatory compliance
- Follow and ensure compliance with Company loss prevention and safety procedures (such as the Company's Five-Minute Incident Notification Rule, wearing of protective gear for safety purposes, etc.)
- Assure store cleanliness by conducting store walks and following up with employees to address concerns

### FINANCIAL
- Analyze daily sales and expense information and take appropriate action to maximize sales and net profits
- Budget and forecast Profit & Loss lines and understand and manage merchandise margins
- Safeguard and account for all money received and disbursed
- Perform all other financial analysis necessary to maximize sales and net profits

### MENTAL CAPABILITIES
- Accurately complete daily paperwork, be knowledgeable about fuel pricing strategies for the store and change fuel prices correctly, receive and verify vendor deliveries, create and change work schedules as needed, etc.
- Monitor sales on cash registers to ensure correct sales transactions, handling of money and checks, and other types of payments received are properly and accurately recorded

CK - 2012

CONFIDENTIALCIRCLEK024270

Position: **Store Manager**

The Store Manager is an exempt salaried employee reporting to the Market Manager

**PHYSICAL ABILITY – THE EMPLOYEE MUST HAVE THE ABILITY TO**

- ☐ Be exposed occasionally to cold or hot temperature extremes in the walk-in cooler, freezer and/or outdoors
- ☐ Bend at waist with some twisting, standing, stooping and/or walking for an entire shift
- ☐ Grasp, reach and manipulate objects with hands continuously throughout the day.    (This requires eye-hand coordination, and may occasionally require climbing a ladder to store/retrieve materials or place/remove signs)
- ☐ Occasionally lift and/or carry up to 60 pounds from ground to waist (to replenish fountain syrups, ice, etc. when necessary)

**OPERATION OF EQUIPMENT**

- ☐ Efficiently perform multi-function operations of all store equipment (fuel pumps, measure fuel tank levels, etc.)
- ☐ Maintain property and equipment to ensure customers have a safe shopping experience and to avoid the loss of sales

THE ABOVE STATEMENTS ARE INTENDED TO DESCRIBE THE GENERAL NATURE AND LEVEL OF WORK PERFORMED BY THOSE ASSIGNED TO THIS JOB. THEY ARE NOT INTENDED TO BE AN EXHAUSTIVE LIST OF ALL RESPONSIBILITIES, DUTIES, AND SKILLS REQUIRED OF THE POSITION. NOTE: This Job Description may change periodically as required by business necessity, with or without advance notice to employees.

CONFIDENTIALCIRCLEK024271